Patricia A. Shiu, State Bar No. 104894
Lewis Bossing, State Bar No. 227492
THE LEGAL AID SOCIETY -- EMPLOYMENT LAW CENTER
600 Harrison St, Suite 120
San Francisco, CA 94107
Telephone:   (415) 864-8848
Facsimile:  (415) 864-8199

Guy B. Wallace, State Bar No. 176151
Judith A. Rosenberg, State Bar No. 87657
SCHNEIDER & WALLACE
180 Montgomery St., Ste. 2000
San Francisco, CA 94104
Telephone: (415) 421-7100
Facsimile:  (415) 421-7105

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| HUGO LOPEZ, as guardian ad litem of L.L., et al., on behalf of themselves and all others similarly situated,<br><br>          Plaintiffs,<br><br>          vs.<br><br>THE SAN FRANCISCO UNIFIED SCHOOL DISTRICT, et al.,<br><br>          Defendants. | ) No. C 99-3260 SI (EAI)<br>)<br>) **CLASS ACTION**<br>)<br>) **MEMORANDUM OF POINTS AND**<br>) **AUTHORITIES IN SUPPORT OF PLAINTIFF'S**<br>) **MOTION TO ENFORCE THE STIPULATED**<br>) **JUDGMENT**<br>)<br>) Hearing Date:  September 8, 2006<br>) Time:  9:00 a.m.<br>) Courtroom 10<br>)<br>) |

Case No. C 99-3260 SI (EAI)
**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION TO ENFORCE THE STIPULATED JUDGMENT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ ii

INTRODUCTION ........................................................................................................... 1

FACTUAL BACKGROUND ........................................................................................... 5

SUMMARY OF ARGUMENT ........................................................................................ 9

ARGUMENT .................................................................................................................. 10

I.    DEFENDANTS HAVE VIOLATED THE GROUP ONE "MILESTONES"
      CONTAINED IN PART III.B OF THE STIPULATED JUDGMENT. ...................... 10

II.   DEFENDANTS HAVE COMMITTED AN ANTICIPATORY BREACH OF
      THE GROUP ONE CONSTRUCTION DEADLINES CONTAINED IN PART
      III.A OF THE STIPULATED JUDGMENT .............................................................. 12

III.  DEFENDANTS SHOULD NOT BE GIVEN MORE TIME TO COMPLETE
      THE ACCESS IMPROVEMENTS IN THE GROUP ONE SCHOOLS .................... 13

IV.   DEFENDANTS MUST COMPLETE THE ACCESS IMPROVEMENTS IN THE
      GROUP ONE SCHOOLS IN COMPLIANCE WITH THE STIPULATED
      JUDGMENT, AND ADDITIONAL MECHANISMS SHOULD BE
      INSTITUTED TO PREVENT FURTHER NONCOMPLIANCE ............................... 18

      A.    Defendants Should Be Ordered To Complete the Access Work in the
            Group One Schools In Accordance With the Stipulated Judgment
            Schedule. ...................................................................................................... 18

      B.    Defendants Should Be Ordered To Pay For More Surveys of Their
            Facilities By Plaintiffs' Experts. ................................................................. 19

      C.    Plaintiffs Should Be Permitted To Depose SFUSD Officials to Facilitate
            Oversight of Defendants' Compliance With the Judgment. ........................ 20

CONCLUSION...................................................................................................... 21

Case No. C 99-3260 SI (EMC)
**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION TO
ENFORCE THE STIPULATED JUDGMENT**

i

1

## TABLE OF AUTHORITIES

2

### FEDERAL CASES

3

*Ackermann v. United States*, 340 U.S. 193 (1950) ........................................................15

4

5

*Aho v. Clark,* 608 F. 2d 365 (9th Cir. 1979) ...............................................................15

6

 *Ass'n For Disabled Americans v. Fla. Int'l Univ.*, 405 F.3d 954 (11th Cir. 2005).........................4

7

*Brown v. Bd. of Educ.*, 347 U.S. 483 (1954) .................................................................3

8

*Callen v. Pa. R.R. Co.*, 332 U.S. 625 (1948) ...............................................................14

9

10

*Frew ex rel. Frew v. Hawkins*, 540 U.S. 431 (2004) ..............................................10, 18

11

*Gates v. Rowland*, 39 F.3d 1439 (9th Cir. 1994) ...........................................................10

12

*Harper v. Poway Unified Sch. Dist.*, 445 F.3d 1166 (9th Cir. 2006) .................................3

13

*Hook v. State of Ariz., Dep't of Corr.*, 972 F.2d 1012 (9th Cir. 1992).............................13

14

15

*Jeff D. v. Andrus*, 899 F.2d 753 (9th Cir. 1989) ...........................................................10

16

*Jeff D. v. Kempthorne*, 365 F.3d 844 (9th Cir. 2004) .....................................................15

17

*Johnson v. Florida*, 348 F.3d 1334 (11th Cir. 2003) .......................................................2

18

*Keith v. Volpe*, 960 F. Supp. 1448 (C.D. Cal. 1997) ......................................................16

19

*Kinzli v. City of Santa Cruz*, 539 F. Supp. 887 (N.D. Cal. 1982).................................10

20

21

*Lee v. Autauga County Bd. of Educ.*, 59 F. Supp. 2d 1199 (M.D. Ala. 1999)..............................16

22

*Motley v. Yeldell*, 664 F. Supp. 557 (D.D.C. 1987).......................................................20

23

*Pacific States Corp. v. Hall*, 166 F.2d 668 (9th Cir. 1948) ............................................11

24

*Palmer v. Rice*, 231 F.R.D. 21 (D.D.C. 2005) ..............................................................20

25

*Presley v. Etowah County Comm'n*, 869 F. Supp. 1555 (M.D. Ala. 1994) ...................................14

26

*Reeves v. City of Atlanta*, Civ. A. Nos. 18191, 18227, 1985 WL. 9665
(N.D. Ga. Sept. 3, 1985) ...............................................................................12

27

28

*Roman v. Korson*, 89 F. Supp. 2d 899 (W.D. Mich. 2000) ............................................20

*Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 384 (1992)..........................................15, 16

*Sekaquaptewa v. MacDonald*, 544 F.2d 396 (9th Cir. 1976) ..........................................................11

*Sierra Club v. Meiburg*, 296 F.3d 1021 (11th Cir. 2002)..................................................................3

*Small v. Hunt*, 98 F.3d 789 (4th Cir. 1996) ...................................................................................16

*Stone v. City & County of San Francisco*, 968 F.2d 850 (9th Cir. 1992) ......................................18

*Swann v. Charlotte-Mecklenberg Bd. of Educ.*, 401 U.S. 1 (1971).................................................18

*TNT Marketing, Inc. v. Agresti*, 796 F.2d 276 (9th Cir. 1986) .......................................................18

*Thompson v. U.S. Dep't of Hous. & Urban Dev't*, 220 F.3d 241 (4th Cir. 2000)...........................16

*Thompson v. U.S. Dep't of Hous. & Urban Dev't*, 404 F.3d 821 (4th Cir. 2005)...........................14

*Toledo v. Sanchez*, No. 05-1376, 2006 WL 1846326 (1st Cir. July 6, 2006)...................................3

*United States v. Asarco, Inc.*, 430 F.3d 972 (9th Cir. 2005).................................................3, 15, 16

*United States v. ITT Continental Baking Co.*, 420 U.S. 223 (1975)...............................................10

*Valdivia v. Davis*, No. Civ. S-94-671 LKKGGH, 2005 WL 1388555
(E.D. Cal. Jun. 8, 2005) ...............................................................................................................10

*Vertex Distrib., Inc. v. Falcon Foam Plastics, Inc.*, 689 F.2d 885 (9th Cir. 1992) .......................11

*Village of Kaktovik v. Watt*, 689 F.2d 222 (D.C. Cir. 1982)...........................................................12

*Visa Int'l Serv. Assoc. v. Bankcard Holders of Am.*, 784 F.2d 1472 (9th Cir. 1986).....................18

*In re Weaver*, 219 B.R. 890 (Bankr. D. Mont. 1998) .....................................................................14

## FEDERAL STATUTES & REGULATIONS

Americans with Disabilities Act of 1990...................................................................................*passim*

Rehabilitation Act of 1973 (§ 504) .........................................................................................*passim*

42 U.S.C. § 1983....................................................................................................................5, 15

Fed. R. Civ. P. 56(f)   ...................................................................................................................20

Fed. R. Civ. P. 59(b) ....................................................................................................13

Fed. R. Civ. P. 60 ..................................................................................................13, 14

Fed. R. Civ. P. 60(b) ...................................................................................1, 13, 14, 15

28 C.F.R. § 35.150(c) ....................................................................................................15

34 C.F.R. § 104.22(d) ....................................................................................................15

## STATE CASES

*Howard S. Wright Const. Co. v. BBIC Investors, LLC*, 136 Cal. App. 4th 228 (2006).........................................................................................................................12

*Rappenecker v. Sea-Land Serv., Inc.*, 93 Cal. App. 3d 256 (1979) .................................................10

*Romano v. Rockwell Int'l, Inc.*, 14 Cal. 4th 479 (1996)...................................................................12

## STATE STATUTES

Cal. Civ. Code § 1638......................................................................................................11

## OTHER AUTHORITIES

1 Witkin, Summary of Cal. Law § 762 ...........................................................................11

**INTRODUCTION**

Plaintiffs bring this motion to enforce the Stipulated Judgment because Defendants have announced that they do not intend to meet the Judgment's deadlines for making several schools accessible to children with mobility and/or vision disabilities. Under the Stipulated Judgment in this case the San Francisco Unified School District ("SFUSD" or "District") is obligated to make eight high schools and five middle schools accessible to children with mobility and/or vision disabilities no later than June 30, 2007. Stipulated Judgment at Section III.A ("Group One Schools & Facilities"). Notwithstanding its express obligation to do so under the terms of the Judgment, the District has unilaterally announced that it has no intention of honoring its legal obligations, and that the completion of the disability access work on almost all of the Group One high schools and middle schools required to be made accessible under the Judgment will be postponed for varying periods of time up to two years.

The District's conduct constitutes a clear violation of the express terms of the Judgment. Specifically, Defendants have already violated the core duty and purpose of the Judgment—the renovation of District facilities to make them fully accessible to the students and others with disabilities who continue to be denied equal access to SFUSD programs, services, and activities. Because of the importance of this matter to the student class members, pursuant to the dispute resolution mechanisms of the Judgment, Magistrate Judge Infante has certified several questions to be resolved by the Court. As this Court is no doubt aware, the proper procedural mechanism for a party seeking to alter the terms of a stipulated judgment or consent decree is to bring a motion for modification pursuant to Federal Rule of Civil Procedure 60(b). As Defendants have failed to bring such a motion despite their stated intention to violate the Judgment, Plaintiffs have been forced to file the instant motion to prevent Defendants from subjecting these vulnerable children to further harm.

The asserted "basis" for the District's need to continue depriving these children of the accessible public schools to which they were entitled decades ago is as follows: "The District

Case No. C 99-3260 SI (EAI)
**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING THEIR MOTION FOR ENFORCEMENT OF THE STIPULATED JUDGMENT**
Page 1

1  could not have known the difficulties involved in the scope of work for these schools until after

2  its architects inspected the sites and started the design process. The District erroneously assumed

3  that it could start all of the projects simultaneously." Bossing Decl., ¶ 8, Ex. G (June 1, 2006

4  Triannual Report) at pages 4-5. No other explanation has been provided.

5  Defendants' proffered rationale for more time is not supported by the record. As

6  Plaintiffs' disability access and school modernization expert Gary Waters explains in his

7  Declaration filed in support of this motion, when Defendants entered into the Stipulated

8  Judgment in June 2004 they were fully aware of the condition of their facilities, and were also

9  familiar with similar modernization projects that they had conducted in the past. *See generally*

10  Waters Decl., ¶¶ 30-31. Similarly, Mr. Waters declares that the District's contention that these

11  projects cannot be completed "simultaneously" is untrue, and that with proper planning the

12  deadlines agreed to in the Judgment can be met. *Id*. at ¶ 25. During the course of this litigation,

13  Defendants conducted extensive studies of their school facilities with the specific purpose of

14  determining the condition of their physical plant and the nature and scope of any disability access

15  barriers. In fact, Defendants sought and obtained a lengthy stay of these proceedings from this

16  Court so that they could prepare their Facilities Master Plan and their Americans with Disabilities

17  Act Transition Plan, the primary purpose of which was to understand the physical improvements

18  that would be necessary to make the District's schools accessible.[1] As such, on the record before

19  this Court, Defendants cannot meet their heavy burden of showing that any modification of the

20  Stipulated Judgment is warranted. *See, e.g., Johnson v. Florida*, 348 F.3d 1334, 1341 (11th Cir.

21  2003) ("A party seeking modification of a consent decree bears a heavy burden of persuasion."

22

23  _____

[1] *See* Order Granting Plaintiffs' Motion for Partial Summary Judgment at 5 & n.5 (Apr. 19, 2004)

24  ("Under Court order, in 2001 and 2002 SFUSD developed, as part of its Facilities Master Plan, ADA self-evaluation and transition plans. [citation omitted] SFUSD retained Logan Hopper

25  Associates to prepare the plans, which the San Francisco Board of Education, the body that determines all SFUSD policies and procedures, did not adopt until June 25, 2002. [citation

26  omitted] Hopper evaluated certain SFUSD schools to assess physical accessibility. [citation omitted] Hopper relied largely on findings of access violations made by earlier accessibility

27  consultants . . . . Plaintiffs' access experts, including Peter Margen and Gary Waters, surveyed almost 50 SFUSD school facilities.").

28  Case No. C 99-3260 SI (EAI)
**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING THEIR MOTION FOR ENFORCEMENT OF THE STIPULATED JUDGMENT**
Page 2

1  (citing *Sierra Club v. Meiburg*, 296 F.3d 1021, 1034 (11th Cir. 2002) ("A party seeking to

2  modify a consent decree has a high hurdle to clear and the wind in its face."))); *accord United*

3  *States v. Asarco, Inc.*, 430 F.3d 972, 979 (9th Cir. 2005) (noting "heavy" burden for proving need

4  for modification).

5  Moreover, there can be no reasonable dispute that children with disabilities will suffer

6  severe harm if Defendants are permitted to simply do as they will and disregard the terms of the

7  Judgment. The District does not have any fully accessible high schools or middle schools at this

8  time, and its failure to meet the deadline for most of the Group One high schools and middle

9  schools will deprive class members of equal access to programs at those crucial grade levels, and

10  will also have the effect of segregating them at just a few locations. *See, e.g.*, Waters Decl. ¶¶

11  46-48. Plaintiffs submit the Declarations of a sample of ten class members who have suffered

12  from the ongoing disability access barriers in the District's schools, and who oppose the District's

13  proposal that access work be delayed. A review of enrollment records shows that more than fifty

14  student class members currently attend one of these high schools or middle schools. Hundreds of

15  current and future class members will continue to suffer and will be denied equal access to the

16  high school and middle school levels if Defendants are permitted to rewrite the Judgment as they

17  see fit.

18  The courts have repeatedly recognized the importance of equal access to the public

19  schools, and the harm that is inflicted when children with disabilities are denied equal access to a

20  public education. As the Ninth Circuit noted only a few months ago:

21  Public schools are places where impressionable young persons spend much of

22  their time while growing up. They do so in order to receive what society hopes
   will be a fair and full education-an education without which they will almost

23  certainly fail in later life, likely sooner rather than later. *See Brown v. Bd. of*
   *Educ.*, 347 U.S. 483, 493, 74 S. Ct. 686, 98 L. Ed. 873 (1954) ("[I]t is doubtful

24  that any child may reasonably be expected to succeed in life if he is denied the
   opportunity of an education."). The public school, with its free education, is the

25  key to our democracy.

26  *Harper v. Poway Unified Sch. Dist.*, 445 F.3d 1166, 1175-76 (9th Cir. 2006); *see also Toledo v.*

27  *Sanchez*, No. 05-1376, ___ F.3d ___, 2006 WL 1846326, *4 (1st Cir. July 6, 2006) ("The

28  Case No. C 99-3260 SI (EAI)
   **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING THEIR MOTION FOR**
   **ENFORCEMENT OF THE STIPULATED JUDGMENT**
   Page 3

1    Supreme Court has 'repeatedly acknowledged the overriding importance of preparing students for

2    work and citizenship, describing education as pivotal to 'sustaining our political and cultural

3    heritage' with a fundamental role in maintaining the fabric of society.'" [citations omitted]);

4    *Ass'n For Disabled Americans v. Fla. Int'l Univ.*, 405 F.3d 954, 957-58 (11th Cir. 2005) ("The

5    Supreme Court long has recognized that even when discrimination in education does not abridge

6    a fundamental right, the gravity of the harm is vast and far reaching. [citation omitted] Thus, the

7    constitutional right to equality in education, though not fundamental, is vital to the future success

8    of our society.").

9                                       **Relief Sought**

10           Accordingly, Plaintiffs respectfully request that this Court order Defendants to comply

11   with the original deadlines for all of the Group One Schools. Further, as discussed below,

12   Plaintiffs request that the Court modify, and increase, the monitoring mechanisms available to

13   Plaintiffs, so that they are better able to verify whether the District is on schedule with the access

14   work, and better able to verify whether Defendants' monitoring reports are providing accurate

15   information about the amount of access work that has actually been completed at the school sites.

16   In this regard, it must be emphasized that Defendants have shown themselves to be untrustworthy

17   in the past, and have a proven history of being unwilling or unable to complete the requisite

18   disability access work. As this Court will recall, Defendants successfully sought a two-year stay

19   of this litigation to prepare an access "plan," only to announce at the end of the planning process

20   that they had not prepared a "funding plan," and that they did not know when, if ever, any access

21   work would actually take place at the schools. In this context, Defendants' announcement that

22   they do not intend to comply with the deadlines for most of the high schools and middle schools

23   covered by Group One of the Stipulated Judgment is disturbing indeed. If Defendants are

24   permitted to delay completion of the work at the Group One schools without penalty, they will

25   have even less incentive to comply with the Stipulated Judgment and ensure that work at the

26   other schools is completed on time. The District's history of failure to meet its obligations raises

27

28   Case No. C 99-3260 SI (EAI)
     **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING THEIR MOTION FOR**
     **ENFORCEMENT OF THE STIPULATED JUDGMENT**
                                     Page 4

serious concerns about its commitment to complete all of the access work even though it entered into a court-approved Stipulated Judgment and agreed to a schedule for work based on its own, presumably informed assessment of the conditions it needed to address. In fact, this Court has previously reached negative conclusions regarding Defendants' *bona fides* with regard to disability access, observing in its Order Granting Plaintiffs' Motion for Partial Summary Judgment that "[t]he fact that defendants' expert can testify to the frequency of noncompliance does not exculpate the SFUSD, nor does it persuade the Court that the SFUSD fully approaches its accessibility mandates with the requisite seriousness and diligence." Order at 7. In short, Defendants' dismal history of violating the ADA and Section 504 must loom large as this Court weighs Defendants' proposal to abandon the deadlines set by the Judgment.

Plaintiffs submit that prudence (not to mention the longtime suffering of these children) demands that monitoring mechanisms reasonably calculated to keep the District on track, and to minimize the risk of further harm to the children, be employed. The present expert monitoring budget ($30,000 annually) has limited class counsel to inspecting a small number of schools. Plaintiffs request that this sum be increased to $75,000, which will permit more frequent inspections of a larger sample of schools. In addition, Plaintiffs request that they be permitted to take a small number of depositions (e.g. six) on an annual basis so that they have the opportunity to question District officials about the status of work and plans for completion under oath, and thus have a further and more reliable window into the activities of the District's bureaucracy than mere self-serving monitoring reports.

## FACTUAL BACKGROUND

Plaintiffs filed their Complaint in this action in December 1999. The complaint alleged, *inter alia*, that the SFUSD systemically failed to make its programs, services, and activities accessible to students and others with mobility and visual impairments, in violation of the Americans with Disabilities Act of 1990 (ADA), Section 504 of the Rehabilitation Act of 1973 ("Section 504") and 42 U.S.C. § 1983. In May 2001 the Court certified the lawsuit as a class

Case No. C 99-3260 SI (EAI)
PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING THEIR MOTION FOR
ENFORCEMENT OF THE STIPULATED JUDGMENT

Page 5

1  action on behalf of two subclasses of plaintiffs, as stipulated by the parties: all students with

2  mobility and/or visual impairments enrolled as students in SFUSD schools since July 6, 1996

3  who may have been denied their rights under Title II and Section 504 as a result of physical

4  barriers in SFUSD facilities; and all persons, other than students, with mobility and/or visual

5  impairments who may have been denied their rights under Title II and Section 504 as a result of

6  physical barriers in SFUSD facilities. Joint Stipulation and Order Re Class Certification at 4.

7  Plaintiffs sought declaratory and injunctive relief on behalf of the two classes.

8      In June 2004, approximately six days before trial was scheduled to begin, the parties

9  reached agreement on resolution of all outstanding issues. This agreement was memorialized in a

10  Stipulated Judgment approved by this Court after a fairness hearing on October 5, 2004. The

11  Order approving the Judgment describes it as "fundamentally fair, adequate and reasonable."

12  Order Granting Final Approval of Class Action Stipulated Judgment at 7:13.

13      The Stipulated Judgment provides extensive relief for the two classes. Among the

14  District's duties under the Judgment is the provision of over 96 schools to be made fully

15  compliant with the requirements of the Americans with Disabilities Act Accessibility Guidelines

16  (ADAAG) by no later than June 30, 2012. Stipulated Judgment at Section III.A. The 96 schools

17  are divided into three groups distinguished in part by the date of completion of access work: 39

18  of the 47 "Group One" schools are to be made fully compliant with ADAAG by June 30, 2007;

19  work at the other eight "Group One" schools and all 24 of the "Group Two" schools is to be

20  completed by June 30, 2010; and work at the 25 "Group Three" schools is to be completed by

21  June 30, 2012. *Id.*[2]

22

23

24  [2] On January 19, 2006, the San Francisco Board of Education voted to close three SFUSD
   schools; merge four other schools onto two school campuses; and relocate five other schools.
   SFUSD, 2006 School Closure Decisions, *at*

25  http://portal.sfusd.edu/data/home/School_Closure_Decisions.pdf (Jan. 20, 2006). Among the
   schools to be closed are Luther Burbank Middle School, a Group Two school, and Cabrillo

26  Elementary School, a Group Three school. *Id.* No Group One schools are currently officially
   scheduled for closure. The parties have not yet met and conferred regarding the effect of the

27  January 2006 closures or future closures on the Stipulated Judgment.

28  Case No. C 99-3260 SI (EAI)
   **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING THEIR MOTION FOR
   ENFORCEMENT OF THE STIPULATED JUDGMENT**
   Page 6

1    The Stipulated Judgment also describes explicit "Milestones" by which various aspects of

2    the access work in the first 39 Group One schools are to be completed:

3       • All design work was to be completed by May 15, 2005.

4       • All construction contracts were to be advertised by July 12, 2005.

5       • All construction contracts were to be awarded by September 1, 2005.

6       • All projects were to be issued a Notice to Proceed by the California Division of the State

7          Architect (DSA) by October 1, 2005.

8    *Id.* at Section III.B.

9    The Stipulated Judgment also provides for resolution of disputes regarding the parties'

10   compliance with its terms. *Id.* at Section XII. Initially, the parties are to meet and confer to

11   resolve any disputes; issues that have not been resolved through the meet-and-confer process are

12   to be referred to Magistrate Judge Edward Infante for non-binding mediation. *Id.* "Upon

13   certification from the mediator that the parties cannot resolve the dispute through mediation,

14   either party may file a motion with the Court to resolve the issue or issues specified in the meet

15   and confer process." *Id.* Although class counsel may not seek a contempt sanction as a remedy

16   to noncompliance, the Stipulated Judgment places no limitation on the Court's power to order

17   any relief deemed necessary to effect compliance. *Id.* The Court maintains continuing

18   jurisdiction over this lawsuit for the length of the Judgment, either May 30, 2012 or until the

19   access work identified therein is completed, whichever is later, for the purpose of overseeing and

20   enforcing its terms. *Id.* at Sections XVI, XVII.

21

22   Under the Stipulated Judgment, defendants must provide a written report to class counsel

23   every four months on the status of the District's compliance with the Judgment. *Id.* at Section

24   X.B. The report must include descriptions of "[w]hat facilities have been modified and in what

25   manner, and what access work has been performed, including a report on which schools are in

26   compliance with the Group One and Group Two standards." *Id.* In their June 1, 2005, report,

27   defendants reported, for the first time, that they did not intend to comply with the deadline for

28   Case No. C 99-3260 SI (EAI)
**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING THEIR MOTION FOR
ENFORCEMENT OF THE STIPULATED JUDGMENT**

Page 7

completing access work at all of the Group One schools—that is, that the June 30, 2007, deadline for completion of construction projects designed to ensure ADAAG compliance at the first 39 schools would not be met for eight of the schools. Bossing Decl., ¶ 2, Ex. A (June 1, 2005 Triannual Report), at 3-4. A revised schedule attached to the report also indicated that none of the "Milestone" deadlines would be met at approximately 21 of the 39 Group One schools. Bossing Decl., ¶ 3, Ex. B. "The projects that cannot be completed within the time frame are primarily high school and middle school projects." *Id.*, ¶ 6, Ex. C (Oct. 1, 2005 Triannual Report), at 4.[3]

In its February 1, 2006, report, the SFUSD again stated that work at eight of the Group One schools will not be completed by June 30, 2007. *Id.*, ¶ 7, Ex. F (Feb. 1, 2006 Triannual Report), at 4. The report offered this explanation: "The District could not have known the difficulties involved in the scope of work for these schools until after its architects inspected the sites and started the design process. The District erroneously assumed that it could start all of the projects simultaneously." *Id.* at 4-5. The District's latest report, from June 2006, repeats these contentions verbatim. *Id.*, ¶ 8, Ex. G (June 1, 2006 Triannual Report), at 4-5.

---

[3] Earlier reports did not indicate the extent of defendants' noncompliance with the Milestone deadlines, or with the June 30, 2007 deadline for completion of access work at the 39 schools. The first report prepared under the Stipulated Judgment, dated October 1, 2004, stated that

> the District is confident that notices to proceed will be issued on or before October 1, 2005, the milestone date set in the Stipulated Judgment, but believes that some of the earlier milestone dates, such as all design work completed by May 15, 2005, may be too ambitious to accomplish. The District is, however, diligently working toward meeting those dates.

Bossing Decl., ¶ 4, Ex. D (Oct. 1, 2004 Triannual Report), at 3. In the February 1, 2005, report, defendants stated that

> [t]he District will unquestionably meet and even exceed the milestones for many of the bond projects, but it is not certain that it will be able to meet the milestones for all 30 projects included in the bond and the group 1 sites in the Stipulated Judgment. Based on the current information before it, the District still believes that it can compete all access work at the group one sites by June 30, 2007, the deadline set forth in the Stipulated Judgment.

*Id.*, ¶ 5, Ex. E (Feb. 1, 2005 Triannual Report), at 3.

1      After the parties met and conferred, class counsel referred defendants' noncompliance

2   with the Stipulated Judgment's schedule for access work to mediation in July 2005. Bossing

3   Decl., ¶ 9. Magistrate Judge Infante declined to certify this issue for court enforcement at that

4   time. *Id.* Class counsel referred the matter for mediation again on October 26, 2005. *Id.* On that

5   date, the parties to this action engaged in non-binding, "arms' length" mediation to resolve this

6   issue, but were unable to reach a mutually acceptable resolution. *Id.*, ¶ 9, Ex. H (Order re

7   Certification of Unresolved Issues), at 2:2-9.

8      On March 28, 2006, Magistrate Judge Infante certified the following issues for resolution

9   by this Court:

10  1.  Have Defendants violated the Stipulated Judgment by failing to comply with the

11      milestones established for the Group One Schools (page 5-7 of the Stipulated Judgment)?

12  2.  Will Defendants' failure to comply with the milestones established for the Group One

13      Schools result in violation of the requirement that these schools will be fully compliant

14      with ADAAG requirements for new construction by June 30, 2007 as required by Section

15      III. A. of the Stipulated Judgment?

16  3.  Should Defendants be permitted additional time to complete the access improvements at

17      the Group One Schools?

18  4.  If Defendants are given additional time, what deadlines should be imposed for

19      completion, and what monitoring mechanisms and conditions should be required to

20      ensure that future deadlines are met?

21  5.  What additional access work or other remedies should be provided to class members as a

22      result of the Defendant's violation of the Stipulated Judgment to date?

23                          **SUMMARY OF ARGUMENT**

24     Defendants admit that they have violated the Stipulated Judgment's "Milestone"

25  deadlines for the Group One schools. They have also explicitly stated their repudiation of the

26  June 30, 2007 deadline for completion of the access work in all of the 39 Group One schools to

27

28  Case No. C 99-3260 SI (EAI)
    **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING THEIR MOTION FOR**
    **ENFORCEMENT OF THE STIPULATED JUDGMENT**
                          Page 9

1 which this deadline applies. The defendants should not be permitted to unilaterally amend the

2 Judgment, and the deadlines for compliance contained therein, without moving before the Court

3 for permission to do so. Defendants have filed no such motion.

4 Plaintiffs respectfully request that defendants be ordered to comply forthwith with the

5 "fundamentally fair, adequate and reasonable" schedule for access work stated in the Stipulated

6 Judgment after lengthy negotiation. Plaintiffs also request other remedies for defendants'

7 noncompliance, including the authorization of the expenditure of additional funds by plaintiffs'

8 experts in monitoring the school construction projects required by the Judgment, as well as other

9 mechanisms for independent verification of the District's self-serving compliance reports.

10 **ARGUMENT**

11
**I.  DEFENDANTS HAVE VIOLATED THE GROUP ONE "MILESTONES"**
12 **CONTAINED IN PART III.B OF THE STIPULATED JUDGMENT.**

13 Under any application of relevant law to the facts of this case, defendants have clearly

14 breached the Stipulated Judgment's "Milestone" deadlines for the Group One schools. Stipulated

15 judgments, like consent decrees or consent judgments, "have elements of both contracts and

16 judicial decrees." *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004); *see also Valdivia v.*

17 *Davis*, No. Civ. S-94-671 LKKGGH, 2005 WL 1388555, **2-3 (E.D. Cal. Jun. 8, 2005)

18 (applying contract law principles to interpretation of "Stipulated Permanent Injunction"); *Kinzli v.*

19 *City of Santa Cruz*, 539 F. Supp. 887, 900 (N.D. Cal. 1982) (stating that "a stipulated judgment

20 'must be construed as any other contract,'" quoting *Rappenecker v. Sea-Land Serv., Inc.*, 93 Cal.

21 App. 3d 256, 263 (1979)). "An agreement to settle a legal dispute is a contract and its

22 enforceability is governed by familiar principles of contract law." *Jeff D. v. Andrus*, 899 F.2d

23 753, 759 (9th Cir. 1989); *see also United States v. ITT Continental Baking Co.*, 420 U.S. 223,

24 238 (1975). Principles of state contract law govern the interpretation and enforcement of

25 stipulated settlements of federal civil rights cases. *Gates v. Rowland*, 39 F.3d 1439, 1444 (9th

26 Cir. 1994); *Valdivia*, 2005 WL 1388555, at **2-3. In California, the agreement's plain language

27

28 Case No. C 99-3260 SI (EAI)
**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING THEIR MOTION FOR**
**ENFORCEMENT OF THE STIPULATED JUDGMENT**
Page 10

1    governs its interpretation if such language is clear and explicit. Cal. Civ. Code § 1638; *Pacific*

2    *States Corp. v. Hall*, 166 F.2d 668, 672 (9th Cir. 1948).

3         The language of the Stipulated Judgment, as described above, is not only unambiguous—

4    it could not possibly be clearer: defendants were to meet all four of the "Milestone" deadlines for

5    all 39 of the Group One schools for which these deadlines were to apply. But the defendants

6    have admitted that they have not met the "Milestone" deadlines for all, or even a substantial

7    portion of, the 39 schools. Bossing Decl., ¶ 7, Ex. F, at 3 (stating, in February 2006, that "the

8    milestone dates originally set were too ambitious to accomplish for all the sites"). The revised

9    schedule attached to the June 1, 2005 report anticipated that the May 15, 2005 deadline for

10   completing design work would not be met for at least 22 of the 39 Group One schools—*a rate of*

11   *compliance with this deadline of far less than 50%. Id.*, Ex. B. Approval from the DSA was not

12   provided—and in most cases not even sought—by the October 1, 2005 deadline for 21 of the

13   schools. *Id.*

14        The defendants' more recent reports have not renounced the unilaterally-revised

15   construction schedule set forth in the June 1 report; in other words, the SFUSD has never

16   reported that "Milestones" it said it would not meet in June 2005 were later satisfied. Under no

17   interpretation of the facts here could the SFUSD be said to have complied, or even substantially

18   complied,[4] with these deadlines. Nor can it plausibly be said that defendants have taken "all

19   reasonable steps" to ensure compliance. *Sekaquaptewa v. MacDonald*, 544 F.2d 396, 404 (9th

20

21

22   [4] *Compare Vertex Distrib., Inc. v. Falcon Foam Plastics, Inc.*, 689 F.2d 885, 891 (9th Cir. 1992)
     ("It is clear that substantial compliance with the terms of a consent judgment is a valid defense to
23   . . . a finding of civil contempt[.]"). In *Vertex*, the plaintiff, moving for enforcement of a consent
     judgment, could only point to one violation of the judgment by the defendant. Here the
24   defendants have already registered numerous failures to comply with the four "Milestone"
     deadlines in over 20 schools, as well as announced its intentional repudiation of the date for
25   completion of all access work in eight middle and high schools. Under no reading of California
     contract law could this be described as "substantial compliance." *See* 1 Witkin, Summary of Cal.
26   Law § 762, p. 690 ("What constitutes substantial performance is a question of fact, but it is
     essential that there be no willful departure from the terms of the contract, and that the defects be
27   such as may be easily remedied or compensated, so that the promisee may get practically what the
     contract calls for.").

28   Case No. C 99-3260 SI (EAI)
     **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING THEIR MOTION FOR**
     **ENFORCEMENT OF THE STIPULATED JUDGMENT**
     Page 11

1    Cir. 1976). *See generally* Waters Decl. at ¶¶ 28-45. As such, defendants are in breach of Part

2    III.B of the Stipulated Judgment, containing the "Milestones" for the Group One schools.

3    **II.    DEFENDANTS HAVE COMMITTED AN ANTICIPATORY BREACH OF THE**
     **GROUP ONE CONSTRUCTION DEADLINES CONTAINED IN PART III.A OF**
4    **THE STIPULATED JUDGMENT.**

5         Defendants have also announced their intention to breach Section III.A of the Stipulated

6    Judgment, which states that the SFUSD will make 39 of the Group One schools "fully compliant

7    with applicable ADAAG requirements for new construction . . . by June 30, 2007." Defendants'

8    June 1, 2005 Triannual Report, and each of their compliance reports issued thereafter, states that

9    this deadline will not be met for eight Group One middle schools and high schools. *Id.*, Ex. F, at

10   4. The June 1 report identifies these schools as George Washington High School; Balboa High

11   School; A.P. Giannini Middle School; James Denman Middle School; Everett Middle School;

12   Galileo High School; Mission High School; and Abraham Lincoln High School. *Id.*, Ex. B. As

13   such, defendants will violate the June 2007 deadline for all but one of the Group One high

14   schools, and all but two of the Group One middle schools.

15        Under California law, "if a party to a contract expressly or by implication repudiates the

16   contract before the time for his or her performance has arrived, an anticipatory breach is said to

17   have occurred." *Romano v. Rockwell Int'l, Inc.*, 14 Cal. 4th 479, 489 (1996); *see also Howard S.*

18   *Wright Const. Co. v. BBIC Investors, LLC*, 136 Cal. App. 4th 228, 243 (2006) ("Anticipatory

19   breach arises where a party repudiates performance of its obligations before they come due[.]").

20   Federal courts have long applied this contract law principle to judicially-enforceable settlement

21   agreements. *See, e.g., Village of Kaktovik v. Watt*, 689 F.2d 222, 231 (D.C. Cir. 1982); *Reeves v.*

22   *City of Atlanta*, Civ. A. Nos. 18191, 18227, 1985 WL 9665, **2-3 (N.D. Ga. Sept. 3, 1985). One

23   party's anticipatory breach creates in the non-breaching party the immediate right to pursue

24   appropriate remedies for the breach. *Wright Const.*, 136 Cal. App. 4th at 243.

25        Here defendants have clearly anticipatorily repudiated their performance of Section III.A

26   of the Stipulated Judgment, the pending June 30, 2007, deadline for completing access work in

27

28   Case No. C 99-3260 SI (EAI)
     **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING THEIR MOTION FOR**
     **ENFORCEMENT OF THE STIPULATED JUDGMENT**
     Page 12

all 39 of the Group One schools. Sadly, of the 123 currently-enrolled class members identified

by the SFUSD in November 2005, 53, or over 42%, currently attend one of the eight schools

defendants have said will not be made accessible by June 30, 2007. Bossing Decl., ¶ 10. This

number does not include, of course, other students who will undoubtedly be enrolled at these

middle schools and high schools before defendants complete their access work responsibilities—

whenever that might be.

**III.  DEFENDANTS SHOULD NOT BE GIVEN MORE TIME TO COMPLETE THE ACCESS IMPROVEMENTS IN THE GROUP ONE SCHOOLS.**

In breaching the Milestone deadlines and announcing their intent to repudiate the June 30,

2007, deadline for completion of access work in all of the 39 Group One schools, defendants seek

to unilaterally alter the express terms of the Stipulated Judgment without first obtaining Court

approval by a motion for modification of the Judgment. Such modification would be

procedurally improper and, more importantly, completely unwarranted by the facts of this case.

As the Court is no doubt well aware, the proper procedure for seeking relief from a existing

court-enforceable agreement is not to simply ignore the terms of the agreement and institute new

ones, but rather to file a Rule 60(b) motion.[5] *Hook v. State of Ariz., Dep't of Corr.*, 972 F.2d

1012, 1015-17 (9th Cir. 1992) (in prison conditions case, holding that burden to seek Rule 60

modification "rests on the Department and cannot be alleviated by ignoring the consent decree

---

[5] Federal Rule of Civil Procedure 60(b) reads, in part:

On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation.

1    and compelling the inmates to undertake litigation to enforce the decree"); *Presley v. Etowah*

2    *County Comm'n*, 869 F. Supp. 1555, 1571 (M.D. Ala. 1994) ("If the Commission believed that [a

3    consent decree provision] was no longer valid . . . the appropriate course would have been to seek

4    modification, not to proceed to violate the decree based only on its opinion that a portion of that

5    decree was invalid.").

6         Defendants have not filed a Rule 60(b) motion, and therefore their unilateral modification

7    of the Stipulated Judgment is inappropriate. Even were they to file such a motion, based on the

8    District's pronouncements to date Defendants should not prevail. The sole justification offered

9    by Defendants for their unilateral modification of the Stipulated Judgment's construction

10   deadlines is that they "could not have known the difficulties involved in the scope of work for

11   these schools until after its architects inspected the sites and started the design process. The

12   District erroneously assumed that it could start all of the projects simultaneously." Bossing

13   Decl., ¶ 8, Ex. G, at 4-5. Although this statement implies that the defendants made an honest

14   "mistake" in assessing its ability to comply with the terms it negotiated, or that new "evidence"

15   has somehow come to light that prevents such compliance, the time for filing a Rule 60(b)

16   motion on either of these express grounds has long past, as it is now almost two years since this

17·  Court entered the Stipulated Judgment. Fed. R. Civ. P. 60(b) (noting that motion for relief from

18   judgment for "mistake" under Rule 60(b)(1) or "newly discovered evidence" under Rule 60(b)(2)

19   must be filed *not more than one year* after entry of judgment).[6]

20

21   _____

22   [6] Further, under Rule 60(b) only the existence of *mutual* mistake can justify reopening an
     otherwise valid settlement agreement. *In re Weaver*, 219 B.R. 890, 899 (Bankr. D. Mont. 1998)

23   (citing *Callen v. Pa. R.R. Co.*, 332 U.S. 625, 630 (1948)). As discussed below, Plaintiffs do not
     share, and have never shared, Defendants' post-Judgment opinion that it cannot comply with the

24   Judgment. Indeed, plaintiffs urged court approval of the Stipulated Judgment with all confidence
     that the District would comply with the construction deadlines contained therein—and should not

25   now be punished for their understandable endorsement of the agreement. *Compare Thompson v.*
     *U.S. Dep't of Hous. & Urban Dev.*, 404 F.3d 821, 828-29 (4th Cir. 2005) ("If the parties had

26   actually anticipated that the . . . Defendants would be so far behind on their obligations at this
     stage in the proceedings, the Consent Decree would never have been executed. The Plaintiffs

27   would not have given up their claims in exchange for an agreement that they anticipated would
     not be followed[.]").

28   Case No. C 99-3260 SI (EAI)
     **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING THEIR MOTION FOR**
     **ENFORCEMENT OF THE STIPULATED JUDGMENT**

1    Nor can defendants rely upon Rule 60(b)(5), which permits modification of judgments

2  where "it is no longer equitable that the judgment should have prospective application." Fed. R.

3  Civ. P. 60(b)(5).[7] To meet this standard, the Rule 60 movant "must satisfy the initial burden of

4  showing a *significant* change either in factual conditions or in the law warranting modification of

5  the decree." *United States v. Asarco, Inc.*, 430 F.3d 972, 979 (9th Cir. 2005) (emphasis added)

6  (citing *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 384 (1992)). Certainly, the case law

7  interpreting the ADA, Section 504, and 42 U.S.C. § 1983 has not significantly "changed" in any

8  relevant aspect since the parties negotiated the terms of the Stipulated Judgment in 2004—nor,

9  for that matter, need plaintiffs demonstrate that defendants continue to violate these laws by

10  denying them access to SFUSD facilities and programs in order to enforce the Judgment. *See*,

11  *e.g.*, *Jeff D. v. Kempthorne*, 365 F.3d 844, 852 (9th Cir. 2004) ("[To demand a showing of

12  continuing violation] would completely eviscerate the central purpose of consent decrees, which

13  is to enable parties to avoid the expense and risk of litigation while still obtaining the greater

14  enforceability (compared to an ordinary settlement agreement) that a court judgment provides.").

15  In fact, as Plaintiffs' expert Gary Waters notes, both the ADA Title II regulations and the Section

16  504 regulations have always required physical access work that is necessary to provide program

17  access to be performed within a three-year time frame. Waters Decl., ¶ 22 (citing 28 C.F.R. §

18  35.150(c) (Title II regulation) and 34 C.F.R. § 104.22(d) (Section 504 regulation)). This

19  requirement has not changed since the Stipulated Judgment was executed and entered.

20    Nor can defendants point to actually "changed" factual circumstances that might support

21  such a motion. The lone statement in the June 2006 report suggesting that unexplained

22  "difficulties," supposedly unseen when the defendants negotiated and then executed the

23  Stipulated Judgment (and only discovered by SFUSD architects at some indefinite later date),

24

25  ────────────
[7] Rule 60(b)(6) is also unavailable to defendants: "Relief from a judgment, under Rule 60(b)(6) .
26  . . should be granted only in cases of extraordinary circumstances. *Aho v. Clark*, 608 F.2d 365,
   368 (9th Cir. 1979) (citing *Ackermann v. United States*, 340 U.S. 193 (1950)). No such
27  extraordinary circumstances exist here. *See generally Ackermann*, *supra*, and *Klapprott v. United
   States*, 335 U.S. 601 (1949).

28  Case No. C 99-3260 SI (EAI)
   **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING THEIR MOTION FOR
   ENFORCEMENT OF THE STIPULATED JUDGMENT**
   Page 15

1  make compliance with the Judgment impossible simply does not describe such changed facts as

2  federal courts have required before considering whether modification of such judgments is

3  appropriate.[8] "A modification of a consent decree must be based on a change in *facts*, not a

4  change in opinion about the effect of unchanged facts." *Thompson v. U.S. Dep't of Hous. &*

5  *Urban Dev't*, 220 F.3d 241, 247 (4th Cir. 2000) (recognizing that "only relevant event" post-

6  entry of consent decree, consultant's report opining that public housing development could not

7  viably be renovated to provide family housing, "did not itself render [the development] unusable

8  as a site for family public housing"). Here defendants have stated nothing more than a

9  misapprehension of facts (or the regulatory framework controlling the operation of those facts)

10 *that already existed* at the time they agreed to complete access work in the 39 Group One Schools

11 by June 30, 2007. The post-Stipulated Judgment opinion of SFUSD architects, administrators, or

12 other advisors regarding unarticulated "difficulties" with simultaneous access work on numerous

13 school sites simply does not change any fact relevant to the defendants' duties to perform this

14 work once the Judgment was executed.[9]

15     Moreover, even if there were some changed circumstance, defendants would still have to

16 demonstrate that compliance with the Stipulated Judgment was at the least "more onerous" than

17 the parties intended, or even completely "unworkable." *Asarco*, 430 F.3d at 979 (citing *Small v.*

18 *Hunt*, 98 F.3d 789, 795 (4th Cir. 1996)). But, as plaintiffs' expert Gary Waters explains, no

19 intervening factual circumstance has taken place that would have made compliance with the

20 Judgment more onerous or unworkable—or that defendants should not have anticipated while

21

22 [8] *See, e.g., Rufo*, 502 U.S. at 385-87 (suggesting that increase of inmate population of almost
   200% over projections made before entry of consent decree might support modification); *Keith v.*
23 *Volpe*, 960 F. Supp. 1448, 1460-61 (C.D. Cal. 1997) (holding that "enormous" and "tremendous"
   changes in racial demographics and housing prices, due in part to Northridge earthquake, justified
24 modification of consent decree to expand reach of nonprofit affordable housing program).

25 [9] *See also Lee v. Autauga County Bd. of Educ.*, 59 F. Supp. 2d 1199, 1206 (M.D. Ala. 1999)
   (determination by new school superintendent that programs equivalent to those in primarily white
26 high school could not be offered to students in primarily African-American high school, and so
   that compliance with desegregation decree was impossible, was not significantly changed fact
27 making compliance with decree more onerous: "[t]he only change in facts the Board presents is
   the installation of a new superintendent").

28 Case No. C 99-3260 SI (EAI)
   **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING THEIR MOTION FOR**
   **ENFORCEMENT OF THE STIPULATED JUDGMENT**

negotiating the Stipulated Judgment in April, May, and June 2004. Waters has surveyed approximately 15 SFUSD schools, both before the entry of the Judgment and in June 2006, and has reviewed architectural plans for 11 of the schools. Waters Decl., ¶¶ 10-18.[10] During the course of his inspections, he has not observed "any physical or structural conditions that would make it infeasible or impracticable for the District to achieve the June 30, 2007 deadline for all of the Group One schools." *Id.*, ¶ 23. Moreover, "there is nothing remarkable about the number or type of schools to be made accessible pursuant to Group One of the Judgment such that it would be infeasible or impracticable to complete the work during the three year time-frame. *Id.*, ¶ 24. Based on his professional experience as an architect working extensively with public school districts and community colleges on school construction process, it is Waters' professional opinion that "there is no architectural or engineering reason that with due diligence and proper planning the barrier removal work could not have been completed by June 30, 2007"—and, in fact, that this deadline is still appropriate. *Id.* at ¶¶ 2-3, 26, 48. As Waters concludes, "the District has not demonstrated any need to depart from the deadlines established in the Stipulated Judgment." *Id.* at ¶ 48.[11]

---

[10] Waters reviews SFUSD's construction plans as part of the monitoring process, under the Stipulated Judgment, intended to assist SFUSD to perform new construction and alterations in a manner that complies with the requirements of the ADAAG. Waters Decl., ¶ 17. He provides the District with his written comments on the plans and drawings that he reviews. *Id.*, ¶ 18.

[11] As Waters notes, the District has had extensive experience performing major modernizations to its existing facilities, including, between 1988 and 2000, major modernizations of all eight of the schools for which they now seek additional time to perform the access work required by the Stipulated Judgment. Waters Decl., ¶ 30. For this reason, as well as those described above, it is Waters' professional opinion that, "[b]ased on the work performed previously (both in terms of studying the sites and performing construction at the sites), the District should have the exercise of ordinary professional care and planning been aware of time and resources necessary to complete work on the Group One schools within the agreed upon time frame." *Id.*, ¶ 31.

IV.   **DEFENDANTS MUST COMPLETE THE ACCESS IMPROVEMENTS IN THE GROUP ONE SCHOOLS IN COMPLIANCE WITH THE STIPULATED JUDGMENT, AND ADDITIONAL MECHANISMS SHOULD BE INSTITUTED TO PREVENT FURTHER NONCOMPLIANCE.**

"A federal court has broad equitable remedial powers." *Stone v. City & County of San Francisco*, 968 F.2d 850, 861 (9th Cir. 1992) (citing *Swann v. Charlotte-Mecklenberg Bd. of Educ.*, 401 U.S. 1, 15 (1971)).  This Court may exercise its inherent equitable power to enforce the Stipulated Judgment in response to the instant motion. *TNT Marketing, Inc. v. Agresti*, 796 F.2d 276, 278 (9th Cir. 1986); *see also Frew*, 540 U.S. at 440 ("Federal courts are not reduced to approving consent decrees and hoping for compliance.  Once entered, a consent decree may be enforced.").  Additionally, as discussed above, under the express terms of the Judgment this Court "shall maintain continuing jurisdiction over this lawsuit . . . for the purpose of overseeing and enforcing the terms herein." Stipulated Judgment at Section XVI; *see Visa Int'l Serv. Assoc. v. Bankcard Holders of Am.*, 784 F.2d 1472, 1474-75 (9th Cir. 1986) (noting district court's retention of jurisdiction to enforce stipulated judgment where terms of agreement expressly provide such jurisdiction).

Under its express enforcement jurisdiction, as well as its inherent power to enforce its judgments, this Court may order any relief it deems necessary to effect compliance with the school construction provisions of the Stipulated Judgment.  Plaintiffs respectfully propose the following equitable remedies to ensure continued compliance with the Judgment.

**A.    Defendants Should Be Ordered To Complete the Access Work in the Group One Schools In Accordance With the Stipulated Judgment Schedule.**

As discussed above, there is no reason why defendants should not be able to meet the June 30, 2007 deadline for completing the access work in all 39 Group One schools in accordance with the Stipulated Judgment. *See* Part III, *supra*.  From Plaintiffs' perspective, there is every reason why this deadline should be met.  Student class members currently attending the eight "late" schools struggle with, and in some cases are physically injured by, the unsafe barriers that have not been removed in their schools—decades after Section 504 and its access requirements became law. *See* Marroquin Decl., ¶¶ 4, 7 (doors at Mission High School are too

1  heavy for Dana Peña; not enough restrooms are accessible; and handrails at stairwells are not

2  long enough for Dana to use stairs safely); Thompson Decl., ¶ 6 (stating that "there are few

3  accessible places that [Danyell Thompson] can go from her classroom" at Balboa High School);

4  Ching Decl., ¶ 5 (describing how Jennifer Ching had to go to the emergency room after a teacher

5  asked a student to push Jennifer's wheelchair down a set of stairs near the front entrance to James

6  Denman Middle School). Students who have been assigned these schools, and their families, are

7  suffer stressful uncertainty as to whether they will be able to access their classes and other

8  programs. *See* Hennessey Decl., ¶¶ 9-11 (although Meredith Hennessey would like to attend

9  Lincoln or Washington High School, "neither school is accessible. . . . If the District is allowed to

10 postpone the access work by three years or more, my daughter will never be able to attend a fully

11 accessible high school"); Ching Decl., ¶ 12 (expressing concern that Jennifer Ching has been

12 assigned to Balboa High School for next year, because of the access barriers there). Some

13 SFUSD students with disabilities simply give up, and will join the thousands of students with

14 disabilities who drop out of elementary and secondary schools. *See* Montenegro Decl., ¶ 10

15 ("Tony has been so frustrated over the lack of access at [Washington High School] that he has

16 been contemplating dropping out of high school and taking the GED test instead.").[12] Plaintiffs

17 will continue to suffer these harms as long as the District is permitted to disregard Title II and

18 Section 504—and the promises it made in the Stipulated Judgment. As such, Plaintiffs

19 respectfully request that defendants should be ordered to comply with this deadline.

20      **B.   Defendants Should Be Ordered To Pay For More Surveys of Their Facilities
21            By Plaintiffs' Experts.**

22      Plaintiffs believe that other equitable remedies are also necessary for ensuring future

23 compliance with the Stipulated Judgment, including increased funding for plaintiffs' experts'

24 monitoring work. Expert review of construction plans and site inspection of completed work are

25 ---
   [12] According to a 2002 Harris Survey, 22% of Americans with disabilities fail to complete high
26 school, compared to 9% of those without disabilities. *See* National Organization on Disability,
   What is the Education Gap?, *at*
27 http://www.nod.org/index.cfm?fuseaction=page.viewPage&pageID=1430&nodeID=1&FeatureID
   =768&redirected=1&CFID=5009500&CFTOKEN=68985667 (May 15, 2002).

28 Case No. C 99-3260 SI (EAI)
   **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING THEIR MOTION FOR
   ENFORCEMENT OF THE STIPULATED JUDGMENT**
   Page 19

1    the two principal means for plaintiffs to ensure that access work is performed adequately and on

2    time. Although such work is mandated under Section XI of the Judgment, as of today, plaintiffs'

3    experts have only received 11 sets of access work construction plans for review. Waters Decl., ¶

4    17. Moreover, because most of the Group One school construction projects have not been

5    completed, plaintiffs' experts have conducted only a few inspections of this access work for

6    purposes of compliance with approved construction plans, pursuant to Section XI.C of the

7    Judgment. *Id.* Because so little of the design and construction work for the Group One schools

8    has taken place, and the work for the Group Two and Three schools not yet begun, plaintiffs

9    foresee an increasing need for their experts to perform these necessary compliance-related tasks

10    in the coming months and years. Yet under the Stipulated Judgment defendants are required to

11    pay only up to $30,000 per year for plaintiffs' experts' plan review and site inspection work.

12    Stipulated Judgment at Section XIV.B. Because such work is crucial to ensuring that this work is

13    completed in a timely manner; plaintiffs respectfully request that the annual monies set aside for

14    expert work in this case be increased to $75,000 per year. Plaintiffs believe that this amount will

15    provide for the plan review and site inspection work necessary, going forward, to ensuring that no

16    further schedule slippage occurs in defendants' performance of the Stipulated Judgment school

17    construction mandates.

18          **C.**    **Plaintiffs Should Be Permitted To Depose SFUSD Officials to Facilitate**

19                **Oversight of Defendants' Compliance With the Judgment.**

20          Among the other remedies at the Court's disposal for ensuring compliance with its

21    injunctive orders is to permit plaintiffs to engage in post-judgment discovery to determine

22    whether defendants are in compliance with the Stipulated Judgment. Federal courts have long

23    held that such discovery is appropriate where necessary to ensure compliance with court-ordered

24    injunctive relief. *See, e.g., Palmer v. Rice*, 231 F.R.D. 21, 25-27 (D.D.C. 2005) (granting

25    plaintiffs' Rule 56(f) request allowing postjudgment discovery to determine compliance with

26    longstanding Title VII consent decree); *Roman v. Korson*, 89 F. Supp. 2d 899, 906-09 (W.D.

27    Mich. 2000); *Motley v. Yeldell*, 664 F. Supp. 557, 557-58 (D.D.C. 1987). Because defendants

28    Case No. C 99-3260 SI (EAI)
**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING THEIR MOTION FOR**
**ENFORCEMENT OF THE STIPULATED JUDGMENT**

have already committed serious breaches of the Judgment, postjudgment discovery is appropriate here. Plaintiffs propose that they be permitted to take approximately six depositions annually so that they have the opportunity to question District officials about the status of work and plans for completion under oath. This discovery will permit plaintiffs to more timely and effectively inform the Court about the progress of—or problems with—the SFUSD's performance of the access work specified in the Stipulated Judgment, and will help ensure that such work will be performed on schedule in the future. Plaintiffs respectfully request that this remedy be ordered for defendants' breach of the access work deadlines in the Judgment.

## CONCLUSION

For all of the reasons stated above, plaintiffs respectfully request that the Court grant their Motion for Enforcement of the Stipulated Judgment. A proposed Order granting the injunctive relief described in this memorandum is filed herewith.

Respectfully submitted,

Dated: August 4, 2006

THE LEGAL AID SOCIETY—
EMPLOYMENT LAW CENTER

Lewis Bossing
Counsel for Plaintiffs

Case No. C 99-3260 SI (EAI)
PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING THEIR MOTION FOR ENFORCEMENT OF THE STIPULATED JUDGMENT