# SCHNEIDER & WALLACE

### A T T O R N E Y S   A T   L A W

Todd M. Schneider
Guy B. Wallace
Carolyn H. Cottrell
Clint J. Brayton
Joshua Konecky

W.H. Willson, IV
Camilla L. Roberson
Lindy J. Morrison
Patrick J. Suter
Brian H. Chun
Rachel E. Brill
Nancy Park
Christian Schreiber

Paula Hagan Bennett, of Counsel

June 22, 2007

**<u>Via E-file</u>**

Honorable Susan Illston
United States District Court
450 Golden Gate Avenue
19th Floor, Courtroom 10
San Francisco, CA 94102

Re:     *Lopez et al. v. San Francisco Unified School District*
        <u>U.S.D.C. N.D. Cal. Case No. 99-3260 SI (EAI)</u>

Dear Judge Illston:

Please find attached Plaintiffs' proposed Order regarding priority access items (Exhibit A). Plaintiffs believe that the attached Order accurately reflects the parties' agreements as well as the Court's guidance.  We also submit a true and correct copy of the transcript of the most recent hearing on these matters on June 15, 2007 (Exhibit B).

Plaintiffs thank the Court for its attention to these matters.

Very truly yours,
SCHNEIDER & WALLACE

Guy B. Wallace

cc:     James M. Emery, Esq. (via e-file and facsimile)
        Kathryn Luhe, Esq. (via e-file and facsimile)
        Co-counsel

---

# *EXHIBIT A*

1  GUY B. WALLACE (State Bar No. 176151)
   SCHNEIDER & WALLACE
2  180 Montgomery Street, Suite 2000
   San Francisco, California 94104
3  Telephone: (415) 421-7100
   Facsimile: (415) 421-7105
4

5  PATRICIA A. SHIU (State Bar No. 104894)
   LEWIS BOSSING (State Bar No. 227492)
6  LEGAL AID SOCIETY-EMPLOYMENT LAW CENTER
   600 Harrison Street, Suite 120
7  San Francisco, California 94107
   Telephone: (415) 864-8848
8  Facsimile: (415) 864-8199

9

10 Attorneys for Plaintiffs

11              UNITED STATES DISTRICT COURT

12            NORTHERN DISTRICT OF CALIFORNIA

13

14 ROXANNE LOPEZ and HUGO LOPEZ, as        No. C 99-3260 SI (EAI)
   guardians ad litem of L.L., et al. on behalf of
15 themselves and all others similarly situated,   CLASS ACTION

16

17              Plaintiffs,                [proposed] ORDER RE PRIORITY
                                           ACCESS ITEMS
18         vs.

19 THE SAN FRANCISCO UNIFIED SCHOOL
   DISTRICT, et al.,
20

21              Defendants.

22

23

24

25

26

27

28

SCHNEIDER
& WALLACE

                                    1

## <u>ORDER REGARDING PRIORITY ACCESS ITEMS</u>

The parties have met and conferred regarding certain priority access items to be completed by the earliest practicable date at the following seven schools. The following priority access items shall be completed by Defendants at these schools sites by no later than the dates specified below. As required by the Stipulated Judgment in the above-captioned matter, all work specified below shall comply with the design standards set forth in the Americans with Disabilities Act Accessibility Guidelines ("ADAAG"). All work identified in the following bullet points is to completed as shown on the phasing plans shown to Mr. Waters and class counsel on May 11, 2007. (True and correct copies of those phasing plans are filed herewith.)

**James Denman Middle School.** Defendants shall complete the following priority disability access work at James Denman Middle School:

- Exterior Path of Travel                                    August 28, 2007
- Accessible restrooms: T64 & T54; T96A (unisex)
  T59 & T61; T115A & T66; T118 (unisex)
  T55 & T50; T57 & T52; T19 & T19A,
  and adjacent water fountains                      August 27, 2007
- Accessible elevator and control panel        August 28, 2007
- Wellness Center                                           August 28, 2007

Additionally, the library will be under construction and closed to all students during the fall of 2007. During the 2007-08 school year, Defendants shall operate the library at an accessible interim location. At the interim location, Defendants shall provide accessible seating and an accessible checkout counter. Defendants shall provide signage directing persons with disabilities to assistance with retrieving books. The library will reopen in its permanent accessible location for the 2008-2009 school year.

SCHNEIDER
& WALLACE

*Lopez, et. al. v. San Francisco Unified School Dist.*, C-99-3260 SI (EAI)
[proposed] Order Re Priority Access Items

**Mission High School.**  Defendants shall complete the following priority disability access work at Mission High School:

| | |
|---|---|
| • Exterior path of travel, including one student entrance from the parking lot | August 28, 2007 |
| • Accessible primary entrance | December 31, 2007 |
| • Interior path of travel | December 31, 2007 |
| 1st floor accessible ramp to cafeteria | August 27, 2007 |
| 2nd floor accessible ramps | February 27, 2008 |
| 3rd floor accessible ramp adjacent to auditorium | June 30, 2008 |
| 4th floor accessible ramp adjacent to computer room | September 30, 2008 |
| • Two unisex restrooms at the health center | August 27, 2007 |
| • Accessible restrooms: T30 & T40; T1-0 (unisex) T2-1 & T3-1; T1-1 (unisex); T10-2 & T12-2; T11-2 (unisex); T6-3 & T8-3 | November 1, 2007 November 1, 2007 |
| • The water fountains located adjacent to these restrooms will be made accessible simultaneously with restroom work | |
| • Accessible elevator and control panel | December 31, 2007 |
| • Accessible signage for Wellness Center | August 28, 2007 |
| • Special education classrooms: 225 & 226 | November 30, 2007 |
| • Special education classrooms: 229, 230, & 231 | February 29, 2008 |
| • Accessible library door hardware | August 28, 2007 |
| • Accessible library | August 28, 2008 |
| • Interim Library access: | August 27, 2007 |
| Interim access measures pending the provision of a fully accessible Library will include the | |

SCHNEIDER & WALLACE

*Lopez, et. al. v. San Francisco Unified School Dist.*, C-99-3260 SI (EAI)
[proposed] Order Re Priority Access Items

1   provision of a temporary accessible checkout counter

2   adjacent to the existing checkout counter.

3   Defendants shall provide signage directing

4   persons with disabilities to assistance with retrieving

5   books. Defendants shall provide accessible furniture

6   (e.g. work stations) in the Library. Defendants shall

7   ensure that library entrance doors are propped open

8   while in use to provide access.

9   **George Washington High School.**  Defendants shall complete the following priority

10  disability access work at George Washington High School:

11  - Exterior path of travel                                    August 28, 2007

12  - Accessible restrooms: T54 & T44;

13  T62 & T58; T66 & T36;

14  2 unisex accessible restrooms at T3.                          August 27, 2007

15  - The water fountains located adjacent to these

16  restrooms will be made accessible simultaneously

17  with restroom work

18  - Braille signage on elevator control panels

19  and elevator cab with dimensions that comply

20  with ADAAG § 4.1.6(3)(c)                                      August 28, 2007

21  - Accessible elevator control panel                          As soon as practicable[1]

22  - Accessible Special education classroom #106                August 28, 2007

23  - Accessible Library                                         January 31, 2008

24  - Interim Library access:                                    August 27, 2007

25  Interim library location shall be accessible,

26

27  _____

Defendants to confer with Class Counsel and the Court promptly in this regard.

28

---

4

*Lopez, et. al. v. San Francisco Unified School Dist.*, C-99-3260 SI (EAI)
[proposed] Order Re Priority Access Items

1    and will include an accessible check-out counter.

2    Defendants shall provide signage directing

3    persons with disabilities to assistance with retrieving

4    books. Defendants shall provide accessible furniture

5    (e.g. work stations) in the Library. Defendants shall

6    ensure that library entrance doors are propped open

7    while in use to provide access.

8    • Accessible cafeteria                              August 28, 2008

9    • Interim cafeteria access:                         August 27, 2007

10   Interim access measures pending the provision

11   of a fully accessible cafeteria will include either

12   (a) an accessible entrance, or (b) keeping the cafeteria

13   entrances doors propped open during operating hours.

14   In addition, by July 13, 2007 Defendants shall order accessible tables

15   in the number and type required by ADAAG,

16   and shall use their best efforts to provide

17   accessible cafeteria tables in conformance with the

18   ADAAG by no later than December 31, 2007.

19   Defendants represent that the tray slide in the food

20   service line is mounted at 39" high, and that staff service

21   is provided to students with mobility disabilities.

22   **Galileo High School.** Defendants shall complete the following priority disability access

23   work at Galileo High School:

24   • Exterior path of travel                           August 28, 2007

25   (Including accessible path of travel from exterior of school to main primary

26   entrance to be available by first day of school.  Defendants to provide an

27   accessible path of travel to connect the main school buildings.)

28

5

SCHNEIDER
& WALLACE

- Accessible restrooms: T35 (unisex)

  T11; 3rd floor girls' restroom with accessible entrance,

  lavatory, and stall                                   August 27, 2007

- Five additional sets of accessible restrooms          December 31, 2007

  T09 & T10; T11 (unisex); T20 & T21;

  T22 & T23; T62 (unisex); one set of accessible

  restrooms in portable along Bay Street

- The water fountains located adjacent to the

  accessible restrooms will be made accessible simultaneously

  with restroom work

- Accessible elevator and control panel                 August 28, 2007

- Accessible Nurse's office                              December 31, 2007

- Accessible library door hardware                       August 28, 2007

- Accessible cafeteria                                   August 28, 2008

- Interim cafeteria access:                              August 27, 2007

  Interim access measures pending the provision

  of a fully accessible cafeteria will include either

  (a) an accessible entrance, or (b) keeping the cafeteria

  entrances doors propped open during operating hours.

  In addition, by July 13, 2007 Defendants shall order accessible tables

  in the number and type required by ADAAG,

  and shall use their best efforts to provide

  accessible cafeteria tables in conformance with the

  ADAAG by no later than December 31, 2007.

  Defendants represent that the tray slide in the food

  service line is mounted at 31" high.

6

SCHNEIDER
& WALLACE

*Lopez, et. al. v. San Francisco Unified School Dist.*, C-99-3260 SI (EAI)
[proposed] Order Re Priority Access Items

**Balboa High School.** Defendants shall complete the following priority disability access work at Balboa High School:

- Exterior path of travel                August 28, 2007
- Accessible restrooms: A217 (unisex); A220 & A200; E122 & E123; C156 (accessible unisex restroom near health center)            August 27, 2007
- The water fountains located adjacent to these restrooms will be made accessible simultaneously with restroom work            August 28, 2007
- Braille signage on elevator control panels, and elevator cab with dimensions that comply with ADAAG § 4.1.6(3)(c)            August 28, 2007
- Accessible elevator control panel         As soon as practicable[2]
- Special education classrooms: #E124 & #E130            August 27, 2007
- Accessible Library                  August 28, 2008
- Interim Library access:               August 27, 2007
  Interim access measures pending the provision of a fully accessible Library will include (a) the provision of a temporary accessible checkout counter adjacent to the existing checkout counter.  Defendants shall provide signage directing persons with disabilities to assistance with retrieving books. Defendants shall provide accessible furniture

---

[2] Defendants to confer with Class Counsel and the Court promptly in this regard.

7

1  (e.g. work stations) in the Library. Defendants shall

2  ensure that library entrance doors are propped open

3  while in use to provide access.

4  • Accessible cafeteria                                          August 28, 2008

5  • Interim cafeteria access:                                   August 27, 2007

6  Interim access measures pending the provision

7  of a fully accessible cafeteria will include either

8  (a) an accessible entrance, or (b) keeping the cafeteria

9  entrances doors propped open during operating hours.

10  In addition, by July 13, 2007 Defendants shall order accessible tables

11  in the number and type required by ADAAG,

12  and shall use their best efforts to provide

13  accessible cafeteria tables in conformance with the

14  ADAAG by no later than December 31, 2007.

15  Defendants shall also provide at least one food line

16  containing an accessible path of travel.

17  **Lowell High School.**  Defendants shall complete the following priority disability access

18  work at Mission High School:

19  • Exterior path of travel                                       August 28, 2007

20  • Auditorium/Theatre: one accessible unisex restroom   August 28, 2007

21  • Accessible restrooms: ST1-1 & ST1-2;

22  ST1-3 & ST1-4; ST2-1 & ST2-2; ST2-3

23  & ST2-4; 250A (unisex); T64 (unisex); 250B (unisex);

24  252 & T68                                                        August 27, 2007

25  • The water fountains located adjacent to these

26  restrooms will be made accessible simultaneously

27  with restroom work

28

SCHNEIDER
& WALLACE

8

| | |
|---|---|
| • Accessible elevator and control panel | August 28, 2007 |
| • Accessible Library | August 27, 2007 |
| • Accessible Cafeteria | August 27, 2007 |
| • Accessible ramp to Wellness Center | August 27, 2007 |

**Abraham Lincoln High School.**    Defendants shall complete the following priority disability access work at Abraham Lincoln High School:

| | |
|---|---|
| • Exterior path of travel | August 28, 2007 |
| • Access work on T107 & T113; T211 & T213; T311 & T313; T168 & T172; T165B (unisex) to provide restrooms with accessible (a) entrances, (2) lavatories, and (3) stalls | August 27, 2007 |
| • One set of accessible restrooms at bungalows | August 27, 2007 |
| • The water fountains located adjacent to these restrooms will be made accessible simultaneously with restroom work | |
| • Braille signage on elevator control panels, and elevator cab with dimensions that comply with ADAAG § 4.1.6(3)(c) | August 28, 2007 |
| • Accessible elevator control panel | As soon as practicable[3] |
| • Accessible Nurse's office | August 28, 2008 |
| Interim access measure: Defendants shall install appropriate signage providing assistance with access to the Nurse's office (*e.g.*, "For assistance, please knock") | August 27, 2007 |

---

[3] Defendants to confer with Class Counsel and the Court promptly in this regard.

9

SCHNEIDER
& WALLACE

| | | |
|---|---|---|
| 1 | • Accessible Library | August 28, 2008 |
| 2 | • Interim Library access: | August 27, 2007 |

3  Interim access measures pending the provision

4  of a fully accessible Library shall include

5  the provision of a temporary accessible

6  checkout counter adjacent to the existing checkout

7  counter.  Defendants shall provide signage directing

8  persons with disabilities to assistance with retrieving

9  books. Defendants shall provide accessible furniture

10  (e.g. work stations) in the Library.

| | | |
|---|---|---|
| 11 | • Accessible cafeteria | August 28, 2008 |
| 12 | • Interim cafeteria access: | August 27, 2007 |

13  Interim access measures pending the provision

14  of a fully accessible cafeteria will include either

15  (a) an accessible entrance, or (b) keeping the cafeteria

16  entrances doors propped open during operating hours.

17  In addition, by July 13, 2007 Defendants shall order accessible tables

18  immediately in the number and type required by ADAAG,

19  and shall use their best efforts to provide

20  accessible cafeteria tables in conformance with the

21  ADAAG by no later than December 31, 2007.

22  Defendants represent that the tray slide in the food

23  service line is mounted at 37" high, and that staff service

24  is provided to students with mobility disabilities.

| | | |
|---|---|---|
| 25 | • Accessible Auditorium | August 31, 2008 |
| 26 | • Accessible Science Classrooms | December 31, 2008 |

27

28

**SCHNEIDER & WALLACE**

*Lopez, et. al. v. San Francisco Unified School Dist.*, C-99-3260 SI (EAI)
[proposed] Order Re Priority Access Items

- Science Classrooms                                          December 31, 2007

  Defendants shall install automatic door openers

  at Rooms 304 and 306.

- Accessible special education classroom #165        August 28, 2008
- Interim special education access                          August 27, 2007

  Defendants will provide an accessible sink in special education classroom

  #165 by providing an accessible lavatory in adjoining unisex restroom

  T165B, as stated above.


**Signage.**  Defendants shall install temporary accessible signage directing persons with disabilities to accessible restrooms and paths of travel as each phase of construction is performed, and before students occupy each modernized space.  Defendants shall provide permanent accessible signage for the items listed above after all finish work and painting is done, and before students occupy each modernized space.  All signage shall contain California Braille to the extent required by ADAAG.

**Group Two Schools.**  Defendants shall provide class counsel with the contracts with the architects who have been retained to do work on the Group Two schools.  By July 13, 2007 Defendants shall also provide class counsel with the project schedules for the Group Two schools. Defendants shall supplement the foregoing documentation as it becomes available between the date of this Order and the October 1, 2007 triannual report required by the Stipulated Judgment, and shall supplement this documentation in connection with successive triannual reports as additional or amended documents are developed.   In addition, beginning with the October 1, 2007 triannual report, approximately two weeks after each such report is forwarded to Plaintiffs a representative of Defendants having personal knowledge of and responsibility for the compliance efforts associated with the Stipulated Judgment shall appear before the Court.  Defendants' representative will be prepared to testify regarding the contents of the triannual report, including the status of the School District's efforts to comply with the Group One and Group Two deadlines

SCHNEIDER
& WALLACE

*Lopez, et. al. v. San Francisco Unified School Dist.*, C-99-3260 SI (EAI)
[proposed] Order Re Priority Access Items

1    including any anticipated inability to meet any deadlines, or other compliance problems or issues

2    that may arise in the following four month period. The parties will be responsible for scheduling

3    these hearings with the Court. The first such hearing will take place on October __13__, 2007 at

4    __4:00 p.m__. The hearing set for June 27, 2007 is vacated.

5        This Order shall be enforceable by motion to this Court or *sua sponte*. In conjunction with

6    their production of each triannual report to Plaintiffs, Defendants shall notify this Court and class

7    counsel if they believe that they will not complete this access work in accordance with the

8    schedule set forth herein, or if they have reason to believe that they will not meet the dates

9    specified in their project schedules or any deadlines regarding the Group Two schools.

10

11         **IT IS SO ORDERED.**

12

13

14   Dated: June __25__, 2007

15   
                         Hon. Susan Illston

16                       United States Dis[t.]

17

...

SCHNEIDER
& WALLACE

*Lopez, et. al. v. San Francisco Unified School Dist.*, C-99-3260 SI (EAI)
[proposed] Order Re Priority Access Items

# *EXHIBIT B*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE SUSAN ILLSTON, JUDGE

ROXANNE LOPEZ AND HUGO LOPEZ, AS
GUARDIANS AD LITEM OF L.L.; ET AL,

PLAINTIFFS,

VS.                                             NO. C-99-3260 SI

SAN FRANCISCO UNIFIED SCHOOL                    PAGES 1 – 24
DISTRICT, ET AL,

⬛ COPY

DEFENDANTS.

_____

SAN FRANCISCO, CALIFORNIA
FRIDAY, JUNE 15, 2007

TRANSCRIPT OF PROCEEDINGS

APPEARANCES:

**FOR THE PLAINTIFFS:**


SCHNEIDER & WALLACE
180 MONTGOMERY STREET, SUITE 2000
SAN FRANCISCO, CALIFORNIA 94104

BY:  GUY B. WALLACE, ESQUIRE

AND


THE LEGAL AID SOCIETY
600 HARRISON STREET, SUITE 120
SAN FRANCISCO, CALIFORNIA 94107
BY:  LEWIS LOY BOSSING, JR., ESQUIRE
FURTHER APPEARANCES ON NEXT PAGE

REPORTED BY:  KATHERINE WYATT, CSR, RPR, RMR
              OFFICIAL REPORTER, USDC
              COMPUTERIZED TRANSCRIPTION BY ECLIPSE

KATHERINE WYATT, OFFICIAL REPORTER, CSR, RMR (415) 487-9834

2

```
 1    FURTHER APPEARANCES:

 2    FOR THE DEFENDANTS:

 3    DENNIS J. HERRERA, CITY ATTORNEY
      OFFICE OF THE CITY ATTORNEY
 4    1390 MARKET STREET, SIXTH FLOOR
      SAN FRANCISCO, CALIFORNIA 94102

 5

 6    BY:  JAMES M. EMERY, CHIEF OF COMPLEX LITIGATION
      AND KATHRYN LUHE, DEPUTY CITY ATTORNEY

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1    JUNE 15, 2007                    11:55 O'CLOCK A.M.

 2

 3                     P R O C E E D I N G S

 4         THE CLERK:  CALLING CIVIL 99-3260, LOPEZ VERSUS SAN

 5    FRANCISCO UNIFIED SCHOOL DISTRICT.

 6              PLEASE STATE YOUR APPEARANCE.

 7         MR. WALLACE:  GUY WALLACE FOR PLAINTIFF, YOUR HONOR.

 8         THE COURT:  GOOD AFTERNOON.

 9         MR. BOSSING:  LEWIS BOSSING FOR PLAINTIFFS.

10         THE COURT:  GOOD MORNING.

11         MR. BOSSING:  GOOD MORNING.

12         MR. EMERY:  JIM EMERY FOR THE SCHOOL DISTRICT.

13         MS. LUHE:  AND KATHRYN LUHE FOR THE SCHOOL DISTRICT.

14         THE COURT:  GOOD MORNING.  OKAY.  SO WHAT'S THE

15    STATUS?

16         MR. WALLACE:  WELL, I THINK WE'VE RESOLVED A VERY

17    GREAT NUMBER OF ISSUES, BUT THERE ARE A COUPLE REMAINING

18    DISPUTES, THE FIRST OF WHICH PRIMARILY --

19         THE COURT:  BY THE WAY, HAVE YOU FILED ANYTHING SINCE

20    LAST WE WERE TOGETHER?

21         MR. EMERY:  NO.

22         THE COURT:  OKAY.

23         MR. WALLACE:  PLAINTIFFS NEITHER.

24              THE BIG ISSUE SEEMS TO BE LANGUAGE ABOUT HOW TO

25    ENSURE THAT PLAINTIFFS' COUNSEL ARE SUFFICIENTLY UPDATED ON
```

1   PROGRESS ON THE GROUP TWO SCHOOLS TO PREVENT A RECURRENCE OF

2   WHAT HAPPENED THE LAST TIME.

3              AND THE PARTIES' PROPOSED ORDERS, WHICH I GUESS THE

4   COURT DOESN'T HAVE YET, DIFFER SIGNIFICANTLY IN THIS REGARD.

5   ON OUR SIDE WHAT WE WANT IS TO BE ABLE TO FOLLOW UP WITH

6   REQUESTS FOR CERTAIN CATEGORIES OF DOCUMENTS IN CONNECTION WITH

7   THE TRI-ANNUAL REPORTS.

8              IN OUR CATEGORIES OF DOCUMENTS WOULD BE THINGS OF THE

9   NATURE OF THE PROJECT SCHEDULES, CHANGE ORDERS, ANY REVISIONS TO

10  CONTRACTS, PERHAPS ARCHITECTURAL AND ENGINEERING DRAWINGS SO

11  THAT WE CAN KEEP TRACK ON AN ONGOING BASIS OF THE PROCESS AND

12  SEE IF A LAG DEVELOPS THAT WILL THREATEN HAVING ALL THE PLANS

13  DONE BY THE FIRST MILESTONE, WHICH DEFENDANTS HAVE SET TWO YEARS

14  OUT IN A THREE-YEAR PERIOD.

15             THAT'S IMPORTANT BECAUSE, AS THIS COURT WILL RECALL,

16  IF THE PLANS AREN'T ALL DONE BY THAT FIRST MILESTONE, WHICH IS

17  TWO YEARS OUT, THEN IT TAKES A YEAR OR TWO TO DESIGN -- WELL, 12

18  MONTHS, LET'S SAY -- TO DESIGN ONE OF THE BIGGER FACILITIES.

19  THERE'S AUTOMATICALLY A 12 TO 18 MONTH DELAY, WHICH IS HOW WE

20  ENDED UP WHERE WE WERE WITH THE GROUP ONE SCHOOLS.

21             SO IN ADDITION TO RECEIVING CERTAIN DOCUMENTS IN

22  CONNECTION WITH THE TRI-ANNUAL REPORTS AND BEING ABLE TO ASK FOR

23  THOSE ADDITIONAL CATEGORIES OF DOCUMENTS TO FOLLOW UP ON ANY

24  CONCERNS WE MIGHT HAVE, WE'D ALSO LIKE TO BE ABLE TO COME IN AND

25  SEE THE COURT PERIODICALLY, PERHAPS EVERY FOUR MONTHS, AND HAVE

1    THE TYPE OF HEARINGS THAT WE'RE HAVING NOW WHERE SOMEONE TAKES

2    THE STAND AND THE COURT CAN QUESTION THAT INDIVIDUAL AND SO CAN

3    CLASS COUNSEL.  AND WE CAN MAKE SURE THAT NOTHING IS TRANSPIRING

4    THAT WE DON'T KNOW ABOUT THAT'S GOING TO THREATEN THE COMPLETION

5    DEADLINE.

6            AND THE FINAL SAFEGUARD THAT WE BUILT INTO OUR

7    PROPOSED ORDER, WHICH DEFENDANTS HAVE STRICKEN, IS LANGUAGE THAT

8    REQUIRES THEM TO PROACTIVELY REPORT TO THIS COURT AND TO US ANY

9    SLIPPAGE IN THEIR PROJECT SCHEDULES WHICH THEY HAVE REASON TO

10   BELIEVE MIGHT THREATEN MEETING THE FIRST MILESTONE OR THE

11   COMPLETION DEADLINES FOR THE SCHOOLS.

12           SO WE WANT THEM TO COME FORWARD, WHICH THEY DIDN'T DO

13   THE FIRST TIME, AND PROACTIVELY TELL THIS COURT AND US IF THEY

14   BELIEVE THAT:

15           "WOW, YOU KNOW, IT'S LOOKING LIKE THESE DRAWINGS

16           AREN'T GOING VERY WELL."

17           OR:

18           "THERE'S SOMETHING IN INTERNATIONAL STUDIES HIGH

19           SCHOOL THAT'S A MAJOR CONCERN.  WE'RE NOT SURE IF

20           WE'RE GOING TO GET THAT ONE DONE IN THREE YEARS," SO

21   THAT WE CAN KNOW WHEN THAT FIRST ARISES AND LOOK AT WHETHER

22   THERE'S ANY POSSIBILITY OF GETTING IT BACK ON TRACK SO THAT WE

23   DON'T JUST END UP WITH A FAIT ACCOMPLI.

24           THAT'S THE MAIN DIFFERENCE BETWEEN THE PROPOSED

25   ORDERS. THAT WOULD BE THE BIG ISSUE.

1       AND THEN, THERE'S A SMALL ISSUE.

2           **THE COURT:**  AND I'M COUNTING THAT AS THREE, THREE

3   PRONGS OF ONE BIG ISSUE THAT YOU JUST OUTLINED, RIGHT?  OKAY.

4   AND THEN, THERE'S SOMETHING ELSE.

5           **MR. WALLACE:**  THERE'S A COUPLE OF SMALL ISSUES. ONE

6   OF THEM IS THERE'S THIS ISSUE OF ACCESSIBLE SEATING FOR

7   CAFETERIAS AND LIBRARIES IN THE INTERIM.

8           **THE COURT:**  IN THE INTERIM?

9           **MR. WALLACE:**  YES.  THESE ARE INTERIM STEPS TO

10  PROVIDE ACCESS AT CAFETERIAS AND LIBRARIES PENDING THEIR

11  COMPLETION.

12          THE DEFENDANTS HAVE THIS LANGUAGE THAT THEY WILL

13  BEGIN PROCUREMENT OF THE ACCESSIBLE TABLES AND FURNITURE, BEGIN

14  THE PROCUREMENT PROCESS OR SOMETHING OF THAT EFFECT. WE HAVE

15  THAT THEY ARE GOING TO ORDER THEM PRETTY MUCH IMMEDIATELY.

16          **THE COURT:**  I TAKE IT THERE ARE SUCH THINGS.  WE ALL

17  KNOW WHAT WE'RE TALKING ABOUT WHEN WE SAY "ACCESSIBLE TABLES AND

18  CHAIRS"?

19          **MR. WALLACE:**  YES. THERE COULD BE A VARIETY OF MODELS

20  THAT ARE ON THE MARKET, BUT, YES, THESE ARE THINGS THAT ARE

21  AVAILABLE TO SCHOOL DISTRICTS AND OTHER ENTITIES.

22          AND "BEGIN THE PROCUREMENT PROCESS" IS A LITTLE TOO

23  OPEN-ENDED FOR MY TASTE, SPECIFICALLY IN THE CONTEXT OF THIS

24  CASE.  YOU KNOW, WHAT DOES THAT MEAN?  SOMEONE MADE A PHONE CALL

25  TO SOMEONE?

1    YOU KNOW, IF THERE ARE SPECIFIC STEPS IN THAT

2    PROCESS, WE'D LIKE TO SEE THEM OUTLINED IN THE ORDER SO THAT,

3    YOU KNOW, PEOPLE'S FEET ARE HELD TO THE FIRE A LITTLE BIT ON

4    THAT.

5    AND THEN, BELIEVE IT OR NOT, THERE ARE TWO SCIENCE

6    CLASSROOMS AT LINCOLN. WE WANT TO SEE SOME AUTOMATIC DOOR

7    OPENERS ON THEM.  AUTOMATIC DOOR OPENERS INSTALLED WILL BE ABOUT

8    3,000 BUCKS.  THE DEFENDANTS DON'T WANT TO DO IT, OR AT LEAST

9    THAT'S MY UNDERSTANDING OF THEIR LAST POSITION ON THAT.

10    AND THAT, I BELIEVE, IS THE UNIVERSE OF OUR

11    DIFFERENCES AT THIS POINT.

12    THERE WAS SOMETHING ABOUT A SPECIAL EDUCATION

13    CLASSROOM AT LINCOLN, BUT I THINK MR. EMERY AND I JUST RESOLVED

14    THAT BEFORE THE HEARING BEGAN.

15    **THE COURT:**  OKAY.

16    **MR. WALLACE:**  AND HE'LL CORRECT ME IF I'M WRONG.

17    **MR. EMERY:**  YES, WE HAVE AN AGREEMENT THERE.

18    **THE COURT:**  OKAY.  MR. EMERY, DO YOU WANT TO RESPOND

19    ON THESE POINTS?

20    **MR. EMERY:**  WE'VE BEEN WORKING VERY HARD OVER THE

21    LAST SEVERAL WEEKS. AND WE HAVE AN ENORMOUS AREA OF AGREEMENT.

22    LAST NIGHT MR. WALLACE CIRCULATED TO ME A PROPOSED ORDER, AND

23    THIS MORNING I PREPARED A RED LINE OF HIS WHICH HIGHLIGHTS.  I

24    DON'T KNOW IF THE COURT WANTS TO SEE HIS AND THIS RED LINE AS I

25    TALK OR JUST LISTEN.

1          THE COURT:  WELL, RIGHT NOW JUST TELL ME.

2          MR. EMERY:  OKAY. OKAY.  FIRST, WITH REGARD TO

3   ONGOING MONITORING AND COMPLIANCE.

4          THE COURT:  ALL RIGHT.  SO HIS FIRST BIG ISSUE WHICH

5   IS THE THREE SUBPOINTS THAT HE MENTIONED, THAT'S WHAT YOU'RE

6   TALKING ABOUT.

7          MR. EMERY:  EXACTLY. THE PERIODIC HEARINGS EVERY FOUR

8   MONTHS, THIS MOMENT IS THE FIRST I'VE HEARD OF THAT SUGGESTION

9   FROM PLAINTIFFS.  WHAT WE HAD SUGGESTED WHEN WE MET WITH THEM

10  EARLIER THIS WEEK AND WHAT IS INCORPORATED IN AGREED LANGUAGE IN

11  THIS ORDER IS THAT THE COURT WILL SET A HEARING FOR NEXT

12  NOVEMBER 15.

13         THAT NOVEMBER 15 -- OR NOVEMBER AT THE COURT'S

14  CONVENIENCE; WE LEFT THE DATE BLANK.  BUT THE IDEA IS

15  MID-NOVEMBER, WHICH WOULD BE AFTER THE NEXT TRI-ANNUAL REPORT.

16         THE TRI-ANNUAL REPORTS ARE DUE EVERY FOUR MONTHS. WE

17  SUBMITTED ONE JUNE 1ST.  THE NEXT ONE IS DUE OCTOBER 1ST. WHAT

18  OUR IDEA WAS IN SUGGESTING A COURT HEARING AFTER THE NEXT

19  TRI-ANNUAL REPORT IS TO DEMONSTRATE TO THE PLAINTIFFS HOW WE

20  PROPOSE TO PROVIDE ONGOING INFORMATION IN A WAY THAT ISN'T TOO

21  BURDENSOME TO THE SCHOOL DISTRICT; THAT DOESN'T DIVERT THE

22  ESSENTIAL MANAGEMENT RESOURCES FROM DOING THE GROUP TWO SCHOOLS

23  INTO CONTINUING MONITORING.

24         WHAT WE HAVE PROPOSED IN ONGOING INFORMATION EXCHANGE

25  AND UPDATES -- FIRST, I WANT TO BACK UP A LITTLE BIT. I MEAN,

1    THE SCHOOL DISTRICT IN ITS JUNE OF 2005 -- AND THAT'S 25 MONTHS

2    AGO -- EXPLICITLY SAID IN ITS TRI-ANNUAL REPORT:

3                        "WE WILL NOT BE ABLE TO MEET THE CONSTRUCTION

4            DEADLINE FOR" -- AT THAT TIME IT WAS EIGHT SCHOOLS.

5            SO THE PREMISE THAT WE'VE BEEN HIDING THE BALL I

6    DON'T ACCEPT. AND SO I WANT TO HAVE HEIGHTENED REPORTING,

7    HEIGHTENED INFORMATION EXCHANGE HERE.  BUT I'M TRYING TO AVOID,

8    AS I SAID, DIVERTING TOP MANAGEMENT RESOURCES INTO UNNECESSARY

9    REPORTING.  SO WHAT I HAVE PROPOSED, AND THE COURT WILL SEE IT

10   IN OUR RED LINED VERSION OF THE PLAINTIFFS' PROPOSED ORDER, IS

11   THE CATEGORIES OF INFORMATION THAT THE PLAINTIFFS HAVE

12   IDENTIFIED SPECIFICALLY THAT THEY WANT, WHICH INCLUDES PHASING

13   PLANS AND CONTRACTS WITH INDIVIDUAL ARCHITECTS.

14           WE WILL PROVIDE THOSE AS THEY BECOME AVAILABLE ON A

15   ROLLING BASIS BETWEEN NOW AND OCTOBER 1ST. IN FACT, THERE ARE

16   MULTIPLE CONTRACTS, AT LEAST 14 ARCHITECT CONTRACTS, SET BEFORE

17   THE NEXT SCHOOL BOARD MEETING FOR APPROVAL BY THE SCHOOL BOARD.

18           SO WHEN THOSE ARE FINALIZED, EACH OF THOSE -- WE'RE

19   NOT GOING TO WAIT UNTIL THE NEXT TRI-ANNUAL REPORT TO GIVE THOSE

20   TO THE PLAINTIFFS -- WHEN THERE IS A PHASING PLAN THAT REFLECTS

21   WHERE WE THINK WE ARE ON EACH OF THE GROUP TWO SCHOOLS, WE WILL

22   GIVE THAT TO PLAINTIFFS.  WE WON'T WAIT UNTIL OCTOBER.

23           THE COURT:  "WHEN THERE IS A PHASING PLAN"?  WHAT

24   DOES THAT MEAN?

25           MR. EMERY:  FOR THE -- OVERALL FOR THE GROUP TWO

1   SCHOOLS, WHICH IDENTIFIES EVERY MILESTONE DATE FOR EACH SCHOOL

2   AND THE CONSTRUCTION COMPLETION DATE FOR EACH SCHOOL. SOMETHING

3   SIMILAR TO THE BAR CHART THAT WE HAVE SUBMITTED IN THE PAST WITH

4   RESPECT TO THESE GROUP ONE SCHOOLS.

5          **THE COURT:**  ARE YOU PREPARING A PHASING CHART?

6          **MR. EMERY:**  WE ARE PREPARING A PHASING CHART, AND THE

7   REASON IT ISN'T COMPLETE YET IS BECAUSE THE BUDGETING FOR SOME

8   OF THESE SCHOOLS IS STILL IN FLUX.  BUT IT'S -- AND THE PEOPLE

9   WHO ARE DOING THAT HAVE BEEN SPENDING MOST OF THE LAST SIX WEEKS

10  RESPONDING TO THESE INTERIM ISSUES. AND SO THEY ARE --

11         **THE COURT:**  YOU KNOW, I FIND IT VERY -- WELL, IT IS

12  OF SOME CONCERN TO ME THAT WHEN I HEAR YOU SAY:

13              "WELL, THE REASON WE'RE NOT GETTING THINGS DONE

14              IS BECAUSE WE'RE COMING AND REPORTING TO YOU AND THE

15              PLAINTIFFS."

16         THE REASON YOU'RE COMING AND REPORTING TO ME AND THE

17  PLAINTIFFS IS BECAUSE YOU DIDN'T GET THE THINGS DONE. SO IT IS

18  OF SOME CONCERN.  AND, FRANKLY, I JUST DON'T ACCEPT THAT THE

19  REASON THINGS AREN'T GETTING DONE IS BECAUSE YOU HAVE TO EXPLAIN

20  YOURSELVES.

21         I THINK THE PLAINTIFFS ARE QUITE RIGHT TO SAY:

22              "WHAT WE NEED DO IS KEEP ENOUGH TABS ON THE

23              PROCESS THAT WE DON'T FIND OURSELVES IN THE AWKWARD

24              POSITION OF HAVING SOMETHING NOT DONE WHICH THEN

25              NECESSARILY BUILDS IN ANOTHER YEAR OR TWO BEFORE IT

1    CAN GET DONE."

2         SO EVERY TIME YOU SAY TO ME:

3              "WELL, YOU KNOW, WE'D BEFARTHER ALONG ON THIS

4         IF WE HADN'T SPENT THE LAST SIX WEEKS PREPARING

5         STUFF," BY IMPLICATION YOU'RE GOING TO HAVE TO BRING

6    TO ME, MY MIND DRIFTS TO THE LAST FEW HEARINGS WHERE THINGS

7    SIMPLY WEREN'T DONE, AND IT'S DISTRACTING.

8         SO I WANT TO FOCUS ON HOW WE CAN GET DONE THE THINGS

9    THAT DO HAVE TO BE DONE.

10        SO MY QUESTION HAD BEEN:

11             "WHEN DO YOU PLAN TO HAVE A PHASING PLAN READY?"

12        AND YOU'RE SAYING:

13             "WELL, THERE ARE BUDGETING ISSUES" THAT, WHAT,

14   HAVEN'T BEEN DECIDED YET?

15        **MR. EMERY:**  AMONG THE DIFFERENT SCHOOLS. AND I --

16   IT'S MY UNDERSTANDING -- I CAN CHECK WITH MY CLIENTS -- THAT WE

17   WOULD HAVE A PHASING PLAN DONE WITHIN THREE OR FOUR WEEKS THAT

18   REFLECTS ALL OF OUR -- I CAN CHECK IT OUT.

19        **THE COURT:**  YOU WANT TO DO IT RIGHT NOW?

20        **MR. EMERY:**  SURE.

21        WE CAN PREPARE A PHASING PLAN FOR ALL THE GROUP TWO

22   SITES IN FOUR WEEKS.

23        **THE COURT:**  ALL RIGHT.  FOUR WEEKS. THANK YOU.  ALL

24   RIGHT.  I DIDN'T MEAN TO INTERRUPT.

25        **MR. EMERY:**  AND I DIDN'T MEAN TO MAKE ANY EXCUSES.

1  AND MY PREMISE IS WE NEED TO HAVE HEIGHTENED REPORTING.  AND I'M

2  TRYING TO BALANCE THE HEIGHTENED REPORTING WITH KEEPING THE

3  SENIOR MANAGEMENT FOCUSSED ON PERFORMING THE WORK ON THE GROUP

4  TWO SITES AND JUST BALANCING THAT, WHICH IS WHY I'M SAYING, YOU

5  KNOW, BETWEEN NOW AND OCTOBER 1ST WE WILL BE FEEDNG PLAINTIFFS

6  ON A ROLLING BASIS WITH CATEGORIES OF DOCUMENTS THEY WANT WHICH

7  ARE THE TWO THAT I'VE MENTIONED.

8              AND THEN, UPDATING THOSE CATEGORIES OF DOCUMENTS WITH

9  EACH TRI-ANNUAL REPORT WHEN WE'RE ALREADY IN A CYCLE OF

10 REPORTING EVERY FOUR MONTHS. IN ADDITION, IF THERE IS ANY -- IF

11 WE REACH A CONCLUSION THAT WE'RE GOING TO FALL BEHIND ON ANY

12 MILESTONE DATE ON ANY GROUP TWO SCHOOL WE WOULD NOTIFY

13 PLAINTIFFS AND THE COURT IMMEDIATELY.

14              AND WITH RESPECT TO PLAINTIFFS' SUGGESTION THAT THEY

15 WILL SERVE ADDITIONAL REQUESTS FOR ADDITIONAL CATEGORIES OF

16 DOCUMENTS, I AM CONCERNED THAT WITHOUT MORE GUIDANCE ON WHAT THE

17 RANGE OR SCOPE OF THOSE REQUESTS WOULD BE THAT THEY MIGHT NOT

18 STRIKE THE CORRECT BALANCE BETWEEN PROVIDING THE IMPORTANT

19 INFORMATION ABOUT PROGRESS AND DIVERTING THE ESSENTIAL

20 MANAGEMENT RESOURCES.

21              SO I'VE PROPOSED THAT PLAINTIFFS ON GOOD CAUSE CAN

22 ASK FOR ADDITIONAL CATEGORIES OF DOCUMENTS. THAT'S ESSENTIALLY

23 WHERE I AM.

24              **THE COURT:**  SO LET ME JUST SEE IF I UNDERSTAND WHAT

25 YOU'RE SAYING. SO YOU'RE SAYING:

1      "WE WILL GIVE THEM THE TRI-ANNUAL REPORT," WHICH

2 IS GREAT.   THEY ARE PUBLIC DOCUMENTS, I TAKE IT.

3     MR. EMERY:   WELL, THESE ARE THINGS WE CREATE PURSUANT

4 TO THE STIPULATED ORDER.

5     THE COURT:   RIGHT.

6     MR. EMERY:   AND THEY ARE GOING TO HAVE INCREASING

7 LEVELS OF DETAIL ABOUT WHERE WE ARE IN THE GROUP TWO SCHOOLS

8 THAN THEY HAVE IN THE PAST.

9     THE COURT:   ALL RIGHT.   AND YOU SAID ON A ROLLING

10 BASIS, SO AS DISTINCT FROM THE TRI-ANNUAL REPORT.

11     MR. EMERY:   RIGHT.

12     THE COURT:   TRI-ANNUAL REPORT, YOU WOULD PROVIDE

13 CONTRACTS?

14     MR. EMERY:   THE CONTRACTS OF ARCHITECTS THAT

15 PLAINTIFFS HAVE ASKED FOR AND THE PHASING PLAN, BETWEEN NOW AND

16 OCTOBER, BECAUSE WE DIDN'T HAVE CONTRACTS IN JANUARY --

17 JUNE 1ST.   WE HAD STARTED THE TALKS WITH THEM IN MAY ON THESE

18 REPORTING ISSUES.

19    AND SINCE WE DIDN'T HAVE A DELIVERABLE ON JUNE 1ST,

20 I'M SAYING BETWEEN NOW AND OCTOBER WE WILL DELIVER THOSE

21 CATEGORIES ON A ROLLING BASIS.

22    AND THEN, STARTING IN OCTOBER 1ST, MY PROPOSAL IS

23 THAT WE UPDATE ON AN ORDERLY BASIS EVERY FOUR MONTHS.   AND IN

24 ADDITION TO THAT, WHEN WE HAVE REACHED A CONCLUSION THAT WE'RE

25 GOING TO MISS ANY MILESTONE DATE ON ANY SCHOOL WE ALERT

1    PLAINTIFFS AND THE COURT.  AND AT THAT POINT IF PLAINTIFFS WANT

2    ADDITIONAL DOCUMENTATION THEY DON'T TO HAVE WAIT FOR THE NEXT

3    TRI-ANNUAL REPORT, BECAUSE THAT WOULD BE GOOD CAUSE.

4              **THE COURT:**  WHAT ABOUT THE ACCESSIBLE CHAIRS AND

5    TABLES IN THE CAFETERIA AND LIBRARIES?

6              **MR. EMERY:**  THE QUESTION IS WHETHER WE ORDER THEM

7    IMMEDIATELY OR WHETHER WE IMMEDIATELY BEGIN PROCUREMENT. AND OUR

8    CONCERN IS THAT THE PROCEDURES IN THE SCHOOL DISTRICT FOR

9    LETTING ORDERS DOESN'T ALLOW US TO SUBMIT AN ORDER WITH A

10   CONTRACT ON THE DAY THE COURT ENTERS A STIPULATED ORDER.

11             **THE COURT:**  WHAT DO YOU HAVE TO DO?

12             **MR. EMERY:**  WHAT WE HAVE TO DO DEPENDS ON THE SIZE OF

13   THE ORDER, BUT ESPECIALLY THE DOLLAR AMOUNT, AND ESPECIALLY IF

14   THE CONTRACT DOESN'T SPECIFY BY MANUFACTURER THE EXACT FURNITURE

15   THAT IS GOING TO BE DONE.  WE NEED TO HAVE AN OPPORTUNITY FOR

16   THE ARCHITECT, FOR THE CONTRACTOR, FOR THE PEOPLE ON THE SITE TO

17   VERIFY THAT THE FURNITURE THAT WE ORDER MEETS THE FEDERAL

18   ACCESSIBILITY REQUIREMENTS.

19             WE HAVE TO VERIFY LOOKING AT THE CONTRACT AND LOOKING

20   AT THE ROOM EXACTLY WHAT PIECES ARE NEEDED TO DO THAT.

21             THE LANGUAGE THAT WE'VE AGREED TO -- AND THE COURT

22   WILL SEE IT -- SAYS THAT WE'RE GOING TO HAVE THE FURNITURE IN

23   PLACE BY DECEMBER 31ST OF '07. WE WILL USE OUR BEST EFFORTS TO

24   DO SO, BECAUSE IT MAY BE A MANUFACTURER HAS A BACKLOG THAT WE

25   CAN'T CONTROL.

1       IT IS OUR UNDERSTANDING THAT WE WOULD BE -- THAT

2   THROUGH OUR PROCESS WE WOULD BE ABLE TO ACTUALLY PLACE AN ORDER

3   TO THE MANUFACTURER, AGAIN, WITHIN A MONTH, WITHIN FOUR WEEKS.

4   BUT WE JUST CAN'T ORDER THINGS IMMEDIATELY. THERE ARE TOO MANY

5   PLAYERS INVOLVED.  AND THE LANGUAGE AS A WHOLE, I THINK, GIVES

6   THE PLAINTIFFS AND THE CLASS MEMBERS THE PROTECTION THEY NEED ON

7   THIS POINT ABOUT THE CAFETERIA FURNITURE.

8           **THE COURT:**  AND WHAT ABOUT THE AUTOMATIC DOOR

9   OPENERS?

10          **MR. EMERY:**  WE WERE DISCUSSING THE SCIENCE CLASSROOMS

11  BECAUSE THEY WERE USING PROGRAM SPACE, AND WE HAD EXTENSIVE

12  CONVERSATIONS ABOUT THOSE.  AND THEY FOCUSSED ON THE LOCATION OF

13  SAFETY FEATURES LIKE PARTICULARLY EYEWASH -- EYEWASH STANDS.

14  AND WHEN PLAINTIFFS LEARNED EYEWASH STANDS WEREN'T IN EVERY

15  SINGLE SCIENCE ROOM, THEY SAID:

16          "WELL, YOU HAVE TO HAVE AN ACCESSIBLE ENTRANCE TO

17          THE ROOMS THAT HAVE THOSE EYEWASH STANDS."

18          WE DID FURTHER INVESTIGATION AND DETERMINED THAT ALL

19  OF THE LABS WHERE AN ACCIDENT MIGHT OCCUR THAT WOULD REQUIRE AN

20  EYEWASH ARE ACTUALLY IN THE TWO ROOMS THAT HAVE THE EYEWASH

21  STATIONS.

22          SO FROM OUR VIEW WHAT WE'RE LOOKING AT HERE IS TWO

23  CLASSROOMS, AMONG MANY IN THE SCHOOL, THAT HAVE A PROBLEM WITH

24  THE STRIKE SIDE CLEARANCE, IT'S CALLED, OF THE DOOR ENTERING

25  THAT CLASSROOM.

1          THAT PROBLEM WITH THE DOOR IS COMMON BUILDING-WIDE.

2    AND WE HAVE A PHASING PLAN THAT IS HANDLING THIS COMMON DOOR

3    ISSUE THROUGHOUT THE SCHOOL ON AN ORDERLY BASIS.

4          SINCE IN OUR VIEW THERE ISN'T A PARTICULAR PROBLEM

5    WITH THE DOOR FOR THIS CLASSROOM, THAT THE DOOR OPENER FOR THESE

6    ROOMS SHOULDN'T BE AMONG PRIORITY ACCESS ISSUES.

7          THE COURT:  BUT THESE ARE THE TWO ROOMS WHERE THEY DO

8    HAVE OR WILL HAVE THE EYEWASH STANDS?

9          MR. EMERY:  WHERE THEY DO HAVE THE EYEWASH STANDS

10   CURRENTLY THAT ARE ADA COMPLIANT, YES.

11         THE COURT:  AND WHERE THE EXPERIMENTS OR WHATEVER

12   WILL GO ON WHICH MIGHT GIVE RISE TO THE NEED FOR THE EYEWASH

13   STANDS.

14         MR. EMERY:  YES.  YES.

15         THE COURT:  JUST THESE TWO ROOMS.

16         MR. EMERY:  YES.

17         THE COURT:  BUT THEY DON'T HAVE DOORS THAT ARE

18   ACCESSIBLE?

19         MR. EMERY:  THEY HAVE DOORS THAT ARE THE PROPER

20   WIDTH.  THEY DON'T HAVE THE APPROPRIATE CLEARANCE, WHAT IS

21   CALLED "STRIKE SIDE CLEARANCE" FOR WHEN ONE OPENS -- TO ALLOW

22   ONE IN A WHEELCHAIR TO OPEN THE DOOR WITHOUT ASSISTANCE.

23         THE COURT:  SO THEY ARE NOT ACCESSIBLE.

24         MR. EMERY:  THEY ARE NOT ACCESSIBLE TO SOMEONE IN A

25   WHEELCHAIR.

1    THE COURT:  SO DOESN'T IT MAKE SENSE, THEN, THAT

2  THOSE TWO DOORS ARE UNIQUELY IN NEED OF SOME ATTENTION?

3    MR. EMERY:  THEY ARE AS IN NEED OF ATTENTION AS EVERY

4  OTHER DOOR THAT HAS INADEQUATE STRIKE SIDE CLEARANCE.

5    THE COURT:  EXCEPT THESE ARE THE ONLY TWO ROOMS IN

6  THE PLACE WHERE THERE ARE THESE SCIENCE LABS; IS THAT CORRECT?

7    MR. WALLACE:  AND THE PROBLEM CAN BE SOLVED WITH TWO

8  AUTOMATIC DOOR OPENERS.  IT'S ABOUT 3,000 BUCKS INSTALLED,

9  $6,000.

10    THE COURT:  WHAT'S THE PROBLEM WITH IT?

11    MR. EMERY:  THE PROBLEM IS NOT THE MONEY. THE PROBLEM

12  IS WE ARE LOADING AN ENORMOUS AMOUNT OF WORK AT THESE SCHOOLS.

13  YOU'LL SEE THE LIST.  WE'VE ACCOMMODATED PLAINTIFFS WHERE WE

14  CAN. WE COULD DO THIS ON THESE TWO ROOMS IF WE HAVE TO.

15    THE COURT:  OKAY.

16    OKAY.  NOW, YOU WERE GOING TO SAY SOMETHING, MR.

17  WALLACE.

18    MR. WALLACE:  JUST IN TERMS OF THE WHOLE ISSUE ABOUT

19  HOW ALL THIS CAME ABOUT, THE HISTORY --

20    THE COURT:  I DON'T --

21    MR. WALLACE:  YOU DON'T WANT TO GO BACK.

22    THE COURT:  I DON'T WANT TO DO THAT AGAIN, NO.

23    MR. WALLACE:  IT'S IN THE TOM DECLARATION.

24    THE WAY WE'VE DESCRIBED IT IS ACCURATE. THAT IS WHAT

25  UNFOLDED THE FIRST TIME.

1    WITH RESPECT TO THEIR PROPOSAL, WHICH IS WE CAN GET

2  ADDITIONAL CATEGORIES OF DOCUMENTS UPON A SHOWING OF GOOD CAUSE,

3  WELL, YOU SEE, IT'S KIND OF A CATCH 22. HOW DO WE KNOW THAT

4  THERE'S A PROBLEM SO THAT WE CAN COME AND SHOW YOU THAT THERE'S

5  GOOD CAUSE THAT WE NEED SOME MORE DOCUMENTS UNLESS WE CAN SEE

6  MORE THAN JUST THEIR PHASING PLAN?

7    WE WANT TO BE ABLE TO SEE ANY PROJECT SCHEDULES THEY

8  ARE TALKING ABOUT, ANY REVISED VERSIONS THAT MIGHT INDICATE OR

9  SHOW SLIPPAGE IN THE DATES.

10    WE WANT TO BE ABLE TO SEE THE CONSTRUCTION CONTRACTS,

11  ALSO. AND THERE'S SOME ADDITIONAL CATEGORIES THAT ARE

12  SPECIFICALLY ENUMERATED.  IT'S NOT A LOT.  IT'S LIKE FIVE OR SIX

13  THAT'S IN OUR VERSION OF THE ORDER. SO THAT'S THAT ISSUE.

14    THEY WANT TO ONLY PROACTIVELY REPORT TO THE COURT IF

15  A MILESTONE DATE IS THREATENED. WELL, AS I SAID THEIR FIRST

16  MILESTONE IS TWO YEARS OUT. SO UNDER OUR PROPOSAL, THEY HAVE

17  THESE INTERIM STEPS TOWARD GETTING THEIR PLANS DONE, GETTING THE

18  DSA APPROVAL.  AND THAT'S WHAT SUPPOSEDLY TAKES THE TWO YEARS

19  FROM NOW OUT TO THE FIRST MILESTONE.

20    WE WANT THEM TO HAVE TO COME FORWARD AND IDENTIFY TO

21  THIS COURT AND TO US WHEN THERE'S SLIPPAGE IN ANY OF THOSE

22  INTERIM DATES BECAUSE THAT'S WHEN WE'RE GOING TO LEARN THAT

23  WE'RE SLIDING DOWN THE MOUNTAIN AGAIN BEFORE WE GET TWO YEARS

24  OUT.

25    **THE COURT:**  WELL, WHERE DO YOU FIND THE INTERIM

1    DATES?

2                MR. WALLACE:   SOME OF THOSE MIGHT BE IN WHAT THEY

3    CALL A "PHASING PLAN."

4                GARY WATERS CALLS IT "A PROJECT SCHEDULE."

5                I'M MORE COMFORTABLE USING THE TERM "PROJECT

6    SCHEDULE."

7                THOSE DATES -- AS THEY PREPARE THESE PLANS, MY

8    UNDERSTANDING IS THAT THERE ARE CERTAIN DOCUMENTS THAT THEY

9    EXCHANGE BACK AND FORTH AMONGST THEMSELVES.

10               SOME OF THEM ARE CALLED "PHASING PLANS, PROJECT

11   SCHEDULES, CHANGE ORDERS."

12               AND THESE ARE THE ONES THAT SHOW WHEN DATES ARE BEING

13   MOVED AROUND. AND THAT'S REALLY THE STUFF THAT WE NEED TO SEE ON

14   AN ONGOING BASIS.

15               THE COURT:   WHEN YOU SAY "CIRCULATE AMONG

16   THEMSELVES," WHO ARE "THEMSELVES"?

17               MR. WALLACE:   I WOULD SAY IN-HOUSE FACILITIES OVER AT

18   THE DISTRICT AND THEIR EXTERNAL CONTRACTORS WHO ARE HELPING THEM

19   DESIGN THE STUFF. IT'S NOT A BIG WORLD. AND WE REALLY DON'T WANT

20   THE KIND OF STUFF -- WE'RE NOT TRYING TO REOPEN DISCOVERY, YOUR

21   HONOR.

22               THE COURT:   OKAY.

23               MR. EMERY:   I JUST REALLY HAVE -- WE HAVE A NEED TO

24   KIND OF SEE HOW ANY OF THESE DATES ARE EVOLVING.  AND WE CAN'T

25   LEARN WHEN WE GET TWO YEARS OUT BECAUSE THAT'S TOO LATE.

1    **THE COURT:**  OKAY.  WELL, LET ME TELL YOU WHAT I WOULD

2    PROPOSE, AND THEN BRIEFLY YOU MAY EACH TELL ME WHY THIS WON'T

3    WORK.

4            WITH RESPECT TO WHAT MR. WALLACE CHARACTERIZED AS HIS

5    "FIRST BIG ISSUE," WHICH IS TIMELY NOTIFICATION OF WHAT IS GOING

6    ON, WE HAVE THE TRI-ANNUAL REPORTS, WHICH IS TO SAY REPORTS

7    EVERY FOUR MONTHS.

8            I WOULD LIKE TO HAVE A MEETING WITH THE COURT, SAY,

9    TWO WEEKS OR SO AFTER EVERY TRI-ANNUAL REPORT IS PRODUCED. SO

10   THEN AT THAT -- AND I THINK THAT HEARING SHOULD INCLUDE THE

11   ATTENDANCE OF A KNOWLEDGEABLE PERSON FROM THE IN-HOUSE

12   FACILITIES AT THE DISTRICT.  IT NEED NOT BE THE TROOPS OF

13   PEOPLE, BUT A KNOWLEDGEABLE PERSON WHO CAN SPEAK TO THE

14   MATERIALS IN THE TRI-ANNUAL REPORT.

15           EITHER IN ADDITION TO THAT OR AT THE SAME TIME AS

16   THE TRI-ANNUAL REPORT IS PRODUCED, YOU'VE INDICATED, MR. EMERY,

17   THAT THE PHASING PLAN FOR THE NEXT PHASE WILL BE READY IN FOUR

18   MONTHS.  THAT'S THE SAME TIME AS THE TRI-ANNUAL REPORT WOULD BE

19   DUE, SO --

20           **MR. EMERY:**  WE WILL PRODUCE A PHASING PLAN IN ABOUT

21   FOUR WEEKS.  AND THEN, EVERY FOUR MONTHS WE WILL UPDATE IT AND

22   MAKE IT CURRENT.

23           **THE COURT:**  OKAY. FOUR WEEKS, I SEE.

24           **MR. EMERY:**  BECAUSE WE DIDN'T HAVE ONE FOR THE

25   JUNE 1.  THAT'S WHY I'M SUGGESTING THAT WHEN IT'S READY, WHEN

```
1    THE FIRST ONE IS READY FOR THE GROUP TWO SCHOOLS IN THE NEXT
2    MONTH --
3             THE COURT:  IT WILL BE PRODUCED.
4             MR. EMERY:  -- WE WON'T WAIT UNTIL OCTOBER TO GIVE
5    THAT TO THEM.
6             THE COURT:  WELL, IN THE NEXT FOUR WEEKS, THEN, YOU
7    WILL PRODUCE -- YOU WILL PREPARE AND PRODUCE THE PHASING
8    SCHEDULE FOR THE NEXT STEPS.
9             AND AT THE HEARING WHICH WE WILL HAVE ROUGHLY EVERY
10   FOUR MONTHS, BUT PHASED SO THAT THE TRI-ANNUAL REPORT WILL HAVE
11   BEEN PRODUCED TO PLAINTIFFS BY THE TIME OF THE HEARING, I WILL
12   ASK THAT YOU, AND WHOEVER THE IN-HOUSE FACILITIES FOLKS AT THE
13   DISTRICT ARE, REPORT TO THE COURT ON ANY ANTICIPATED SLIPPAGE OR
14   PROBLEMS OR ISSUES THAT YOU FORESEE COMING UP IN THE NEXT FOUR
15   MONTHS THAT MIGHT BE A PROBLEM.
16            YOU HAD SAID THAT YOU ONLY WANTED TO BE REQUIRED TO
17   PRODUCE INFORMATION WHEN YOU -- I THINK YOU SAID YOU KNOW THAT
18   THERE'S GOING TO BE A PROBLEM. AND MR. WALLACE, I THINK, WANTS
19   IT -- THAT'S A LITTLE TOO LATE FOR HIM.
20            I JUST WANT YOU TO BE PREPARED TO ANSWER QUESTIONS
21   AND PRESENT TO THE COURT ISSUES THAT YOU FORESEE THAT MIGHT
22   ADVERSELY AFFECT THE TIMING OF THE PROJECTS THAT WILL HAPPEN IN
23   THE NEXT FEW MONTHS.  AND I WOULD -- AT THAT HEARING WHOEVER
24   COMES SHOULD BE PREPARED TO ANSWER QUESTIONS EITHER FROM ME OR
25   FROM PLAINTIFFS' COUNSEL CONCERNING ANY OF THESE ISSUES.
```

22

1          AND ONE OF THE QUESTIONS PRESUMABLY WOULD BE:

2               "IS ANYTHING HAPPENING OR HAS ANYTHING HAPPENED

3          THAT YOU FEAR MAY AFFECT YOUR ABILITY TO TIMELY DO

4          WHAT YOU'RE SUPPOSED TO DO?"

5          AND THE PERSON SHOULD BE PREPARED TO ANSWER THOSE

6     QUESTIONS. SO THAT'S A LITTLE BIT LESS THAN A PROACTIVE

7     RESPONSIBILITY TO BRING IT TO THE COURT. BUT IT'S A LITTLE BIT

8     MORE THAN WHEN YOU'RE FOR SURE THAT THE SCHEDULE IS ALL BLOWN

9     BEFORE YOU HAVE TO TELL US SOMETHING.

10          SO IT WOULD BE A MATTER OF RESPONDING TO QUESTIONS

11     THAT ARE PUT.

12          IN MY VIEW THAT TAKES CARE OF EVERYTHING EXCEPT THE

13     PLAINTIFFS' REQUEST THAT THERE BE ROLLING PRODUCTION OF

14     ADDITIONAL DOCUMENTS TO INCLUDE PROJECT SCHEDULES, CHANGE

15     ORDERS, REVISIONS TO CONTRACTS AND ARCHITECTURAL AND ENGINEERING

16     DRAWINGS.

17          I'M NOT GOING TO ORDER AT THIS TIME THAT EVERY

18     REVISION TO A CONTRACT, ARCHITECTURAL OR EXCHANGE DRAWINGS OR

19     CHANGE ORDER BE PRODUCED ON A ROLLING BASIS TO THE PLAINTIFFS.

20     THAT'S TOO MUCH.

21          BUT I WILL ORDER THAT THE PROJECT SCHEDULE AS YOU'VE

22     SUGGESTED WILL BE PREPARED IN FOUR WEEKS, BE PRODUCED ON

23     EFFECTIVELY A ROLLING BASIS.  AND WHOEVER COMES TO THE ANNUAL --

24     TO THE HEARINGS WHICH WE SCHEDULE FOR IMMEDIATELY AFTER THE

25     TRI-ANNUAL REPORT SHOULD BE PREPARED TO TALK ABOUT IT, IF THERE

1  ARE CONCERNS ABOUT COMPLETION ON TIME BASED ON REVISIONS TO

2  CONTRACTS OR DRAWINGS OR ANYTHING OF THAT SORT.

3          FINALLY, WITH RESPECT TO THE TWO SMALL ISSUES MR.

4  WALLACE RAISED, THE PLAINTIFFS ARE CONCERNED THAT PROCUREMENT OF

5  ACCESSIBLE CHAIRS AND TABLES IS NOT SUFFICIENTLY SPECIFIC.

6          THE DEFENDANTS ARE CONCERNED THAT IF I ORDER YOU TO

7  PURCHASE THE TABLES AND CHAIRS YOU CAN'T DO IT BECAUSE THERE ARE

8  THINGS THAT YOU HAVE TO DO IN BETWEEN.

9          THE DEFENDANT SAID YOU WOULD ANTICIPATE THAT YOU CAN

10  DO WHAT NEEDS TO BE DONE TO MAKE IT POSSIBLE TO PLACE THE ORDER

11  WITHIN FOUR WEEKS.

12          THAT IS WHAT YOU SAID, CORRECT?

13          **MR. EMERY:**  CORRECT.

14          **THE COURT:**  OKAY.  I'M GOING DO ORDER YOU TO DO THE

15  THINGS YOU HAVE TO DO AND PLACE THE ORDER WITHIN FOUR WEEKS.

16          AND FINALLY I'M GOING TO ORDER YOU TO PUT THE

17  ACCESSIBLE DOOR MOVERS ON THE TWO SCIENCE CLASSROOMS IN LINCOLN

18  HIGH SCHOOL.

19          SO ARE THOSE THINGS DOABLE THE WAY I'VE OUTLINED IT?

20          **MR. WALLACE:**  THAT'S FINE WITH US, YOUR HONOR. THANK

21  YOU.

22          **MR. EMERY:**  YES, YOUR HONOR.

23          **THE COURT:**  OKAY. GREAT.

24          SO CAN SOMEBODY WRITE AN ORDER TO THAT EFFECT THAT I

25  WILL THEN SIGN?

KATHERINE WYATT, OFFICIAL REPORTER, CSR, RMR (415) 487-9834

1          **MR. WALLACE:**  WE WILL PREPARE ONE FORTHWITH.

2          **THE COURT:**  OKAY.  GREAT. AND THEN, SO OUR NEXT

3    MEETING -- AND IF AT ANY TIME YOU NEED AN OUT-OF-SCHEDULE

4    HEARING, I'LL BE HAPPY TO HOLD ONE.  BUT OUR NEXT FOR SURE

5    HEARING WILL BE A COUPLE OF WEEKS AFTER THE TRI-ANNUAL REPORT

6    DUE DATE.  SO YOU CAN WORK WITH TRACY ON GETTING THAT DATE.

7          **MR. EMERY:**  RIGHT NOW THERE'S A HEARING SET FOR

8    JUNE 27.  THE COURT SET THAT IN ITS OCTOBER ORDER, SO WILL WE

9    VACATE THAT ONE?

10          **THE COURT:**  THAT MAKES SENSE, DOESN'T IT?

11          **MR. WALLACE:**  (NODS HEAD.)

12          **THE COURT:**  YES, THAT'S VACATED.

13          THANK YOU.

14          THANK YOU FOR REMEMBERING THAT.

15          ALL RIGHT.  THANK YOU ALL.

16          **MR. WALLACE:**  THANK YOU, YOUR HONOR.

17          (THEREUPON, THIS HEARING WAS CONCLUDED.)

18

19

20

21

22

23

24

25

CERTIFICATE OF REPORTER

I, KATHERINE WYATT, THE UNDERSIGNED, HEREBY CERTIFY
THAT THE FOREGOING PROCEEDINGS WERE REPORTED BY ME, A CERTIFIED
SHORTHAND REPORTER, AND WERE THEREAFTER TRANSCRIBED BY ME INTO
TYPEWRITING; THAT THE FOREGOING IS A FULL, COMPLETE AND TRUE
RECORD OF SAID PROCEEDINGS.

I FURTHER CERTIFY THAT I AM NOT OF COUNSEL OR
ATTORNEY FOR EITHER OR ANY OF THE PARTIES IN THE FOREGOING
PROCEEDINGS AND CAPTION NAMED, OR IN ANY WAY INTERESTED IN THE
OUTCOME OF THE CAUSE NAMED IN SAID CAPTION.

THE FEE CHARGED AND THE PAGE FORMAT FOR THE
TRANSCRIPT CONFORM TO THE REGULATIONS OF THE JUDICIAL
CONFERENCE.

FURTHERMORE, I CERTIFY THE INVOICE DOES NOT CONTAIN
CHARGES FOR THE SALARIED COURT REPORTER'S CERTIFICATION PAGE.
IN WITNESS WHEREOF, I HAVE HEREUNTO SET MY HAND THIS 19TH DAY OF
JUNE, 2007.



KATHERINE WYATT, OFFICIAL REPORTER, CSR, RMR (415) 487-9834